The Remington Sewing Machine Co. vs. Kezertee and another.

---

THE REMINGTON SEWING MACHINE COMPANY vs. KEZERTEE and another.

*April 27 — May 11, 1880.*

SURETY. *(1) When concealment of material fact, by obligee, discharges surety.*
EVIDENCE. *(2) Testimony of party.*
REVERSAL OF JUDGMENT: *(3) For immaterial error in instruction.*

1. If one who contemplates becoming surety to another for a third person, applies to the person to whom the security is to be given, for information

as to the nature, extent and risk of the obligation, or the circumstances, condition or character of ·such third person, while the person so applied to may refuse to give such information, yet, if he undertakes to give it, he is bound to disclose every material fact within his knowledge affecting the proposed liability; and if he conceals any facts unknown to the proposed surety, which, if known, would have deterred him from becoming surety (where the latter has not the present means of ascertaining the fact, or where, though he has such means, artifice is used to mislead him or throw him off his guard), this is a fraud which will relieve the surety from his obligation.   And this is especially so where the surety becomes such at the request of the person to whom the security is given.

2. Testimony of the surety that he would not have become such if he had known the facts concealed, is admissible.

3. An omission by the court of a correct qualification of a general principle of law stated in the charge, is not error, where such qualification is rendered inapplicable by facts shown by the undisputed evidence.

APPEAL from the Circuit Court for *Winnebago* County. In November, 1873, the plaintiff company entered into a contract, in writing, with James H. Barr and Nicholas Konrad, by which the latter became the exclusive agents of the company to sell its machines in this state, and agreed to guaranty the payment of all notes taken by them for the company for machines, and of all debts due the company on account of sales made by them.   By an instrument under seal attached thereto, the defendants became guarantors for the performance of the contract by Barr & Konrad, and covenanted therein to answer and make good to the plaintiff any loss and damage it might sustain through the default of Barr & Konrad, and to pay any judgment the company might recover against them.   This action was brought upon such guaranty. The complaint alleges that Barr & Konrad are in default over $8,000.   The only defense to the action stated in the answer of the defendants, necessary to be noticed, is, that the signatures of the defendants were obtained to the guaranty by means of fraudulent representations and fraudulent concealments of an agent of the plaintiff in respect to the solvency and financial condition of Barr & Konrad.

The evidence tends to show that Barr & Konrad applied to the defendants to become sureties for the performance of their contract with the company, and also that one Hilder, who was a general agent of the company, made the same request of at least one of the defendants, but they severally refused to do so until informed of the financial condition of Barr & Konrad; that the latter thereupon requested the defendants to meet the general agent of the company at their office for the purpose of obtaining the desired information; that the defendants went to such office, and together there met the agent of the company, Mr. Hilder, who told them that he had gone through the books of Barr & Konrad the day before, and had found the latter in a good financial condition, they being $2,500 — or, allowing $500 for bad debts, $2,000 — ahead, and doing a prosperous business; and that, although the company required them to give security, it was a mere matter of form, and there would be no risk in signing the guaranty. The books referred to were there present, but the defendants did not examine them.

Barr & Konrad had previously acted as agents for the company under a similar contract, and when the above conversation was had were liable to the company in a sum exceeding $32,000, as indorsers or guarantors of unpaid promissory notes taken by them for the company for machines sold by them. Nearly $11,000 of this amount was overdue at the time. The agent knew of this liability, but did not inform the defendants of it. The evidence tends to show that the books of Barr & Konrad, above mentioned, did not show the existence of the liability. Each defendant testified that had he been informed of such liability he would not have signed the guaranty.

The judge charged the jury somewhat at length, giving some instructions proposed on behalf of the plaintiff, and refusing to give others; but the substance of the charge is contained in the following paragraph quoted therefrom:

"The defendants had the right to inquire of the agents of

these plaintiffs as to the financial standing and ability of Barr & Co., and it was the duty of these plaintiffs, or their agents, to make truthful representations. It was their duty, when being inquired of, to make known to these defendants material facts which affected the risk that the defendants took in becoming sureties, that were within the knowledge of the plaintiffs or their agents; and, upon such inquiry, any concealment of material facts affecting the risk, or any false representation of material facts affecting the risk, known to the plaintiffs or their agents, would render the bond void, provided they were such facts as both parties had not equal opportunity to ascertain, and provided that the plaintiffs used no artifice or acts tending to divert the attention of the defendants here from making those examinations which were within their reach otherwise, or examining into such facts as were equally within the reach of the knowledge of both parties; but if there are such facts as are peculiarly known to the plaintiffs and not equally known to the defendants, the plaintiffs, or their agents, upon such inquiry, are bound in the law to make them truthfully known, if they know them. . . . One other proposition: It must be such facts that, if known to the defendants, they would not have entered into this contract as sureties."

There was a verdict and judgment for the defendants; and plaintiff appealed from the judgment.

*George W. Burnell,* for the appellant:

In the absence of particular inquiry, the agent of plaintiff was not bound to disclose all the details of the business. Bigelow on Fraud, 44–5, and cases there cited; Brandt on Suretyship, 490, 491; *N. B. Ins. Co. v. Lloyd,* 10 Exch., 523; *Hamilton v. Watson,* 12 C. & F., 109; *Booth v. Storrs,* 75 Ill., 438; *Ham v. Greve,* 34 Ind., 18. The contract which defendants signed, by at least two distinct references, disclosed the fact that plaintiff's agents were required to guaranty the notes taken by them; and it was through defendants' own negligence

The Remington Sewing Machine Co. vs. Kezertee and another.

that they failed to obtain full information upon that point. In addition to the above cases, see *Ætna L. Ins. Co. v. Mabbett*, 18 Wis., 667; *Garbutt v. Bank*, 22 id., 384; *Mamlock v. Fairbanks*, 46 id., 415. But the representation of Hilder was literally true. It was that, deducting estimated bad debts, Barr & Konrad were $2,000 ahead. If these indorsed notes were *liabilities* — and there is nothing to show that the proper steps were ever taken to charge the indorsers,— they were likewise *assets* in their hands for the payment of their debts. It is in evidence that both Barr and Hilder considered $500 a fair estimate, at the time, of the amount of bad debts. If they turned out to be mistaken, that is no fraud. Bigelow on Fraud, 56, 57; 55 Barb., 536; 40 N. Y., 562. Even if the representation was false, it would not vitiate the contract, unless defendants were damaged thereby. *Ableman v. Roth*, 12 Wis., 81; *Castleman v. Griffin*, 13 id., 535; *Barber v. Kilbourn*, 16 id., 485; *Garbutt v. Bank*, 22 id., 384. But there is no proof that, when this action was brought, Barr & Konrad were legally liable on the indorsed notes.

For the respondent there were separate briefs by *Chas. E. Pike* and *H. B. Jackson*, and oral argument by *Mr. Pike:*

In contracts of suretyship, good faith is to be observed; and when a party desirous of obtaining security knows facts of an important character affecting the risk of the surety, and has reason to believe that they are not known to the proposed surety, if information be sought of him or he have a suitable opportunity, it is his duty to make this known. *Maltby's Case*, 1 Dow, 294; *Jackson v. Duchaire*, 3 Term, 552; *Stone v. Crompton*, 5 Bing. N. C., 142; *Franklyn Bank v. Cooper*, 36 Me., 179; *Ætna Life Ins. Co. v. Mabbett*, 18 Wis., 671; *Peabody v. Leach*, id., 657; *Cotzhausen v. Simon*, 47 id., 103; *Lee v. Jones*, 108 Eng. C. L., 386; 4 Am. Law Reg. (N. S.), 487; 11 Vroom, 147; Burge on Suretyship, 218; Brandt on Suretyship, 490, 492, §§ 365, 366; Kerr on F. & M., 122.

LYON, J.  The law is, that if a person who contemplates becoming surety to another for the payment of money or the performance of any act by a third person, applies to the creditor or person to whom the security is to be given, for information as to the nature, extent and risk of the obligation, or the circumstances, condition or character of such third person, the creditor, if he undertakes to give the information, is bound to disclose every material fact within his knowledge affecting the proposed liability.  If the creditor conceal any fact unknown to the proposed surety, which, had he known it, would have deterred him from becoming surety (the latter not having the present means of ascertaining the fact, or, having such means, if artifice be used to mislead him or throw him off his guard), it is a fraud upon him, and relieves him from his obligation. Especially is this so where the obligation of suretyship is entered into at the request of the person to whom the security is given.  In such a case perfect good faith is required of him who is to be benefited by the transaction, if he assumes to give the information; and if that obligation is not observed by him (the surety not having other present means of information), the creditor cannot successfully invoke the protection of the maxim *caveat emptor* to shield him from the consequences of his fraud.

If authority is required for a proposition so obviously reasonable and just, the cases which support it (some of them in this court) will be found cited in the briefs of the respective counsel for the defendants.  The person to whom the security is proposed to be given may refuse to give any information, and, if he so refuses, the maxim *caveat emptor* applies.  The surety then incurs the liability at his own risk.  The charge of the learned circuit judge does not, in express terms, contain this qualification; but on the facts of the case the omission is immaterial, for the reason that the uncontradicted evidence shows that the defendants went to the office of Barr & Konrad

for the express purpose of obtaining information from the agent of the company of their financial condition, and under the charge the jury must have found that the agent assumed to give them such information. In all other respects the charge seems to be in strict accord with the principles above stated, as also are the refusals to give certain instructions proposed on behalf of the plaintiff.

It was claimed in argument that the testimony tended to show that the books of Barr & Konrad showed that they had indorsed or guarantied the notes of the company theretofore taken by them for machines, and hence that the defendants had the present means of knowing the fact. That question was submitted to the jury, and there is sufficient evidence to warrant a finding that the books did not show such liability. The defendants both testified that had they known of that liability they would not have signed the guaranty. This was competent testimony to go to the jury. Assuming the defendants to be men of ordinary caution and prudence, it is easy to believe that they testified truly. Upon the whole case we are impelled to the conclusion that the judgment should not be disturbed.

*By the Court.*— Judgment affirmed.