J. K. Barnes and M. H. Schussler, Appellants, v. Century Savings Bank et al., Appellees.

**Appeal:** motion to strike. An appeal may be taken from the ruling upon a motion to strike parts of a pleading.

**Principal and surety:** fraud: concealment of facts: pleadings. Where one about to become a surety for another applies to the creditor for information concerning the nature, extent and risk of the obligation, or concerning circumstances of the debtor, and the creditor undertakes to give such information, he must disclose all the material facts within his knowledge affecting the surety's liability; and concealment of any fact unknown to the surety, which, if disclosed, would have deterred him from assuming the obligation constitutes a fraud which will relieve the surety from liability, although the undertaking was for a sufficient consideration.

In this action by the maker and surety to cancel notes executed to defendant bank, the surety's reply to defendant's counterclaim on the notes is held to allege such a concealment by the bank of facts relating to the maker's indebtedness as to amount to a fraud upon the surety, and the court erred in striking these allegations from the reply.

**Same:** election of remedies: estoppel. The surety in this action was not estopped from pleading the fraud of the payee in inducing him to assume the obligation by the fact that he joined in the main action for cancellation of the notes and appealed from an adverse finding, but dismissed the appeal before it was submitted; no judgment being shown against either the maker or surety or relied upon by the payee in his action upon his counterclaim.

**Same.** The surety in this case was not precluded from relying on the misrepresentations of an officer of defendant bank as to the extent of the maker's indebtedness by the fact that some of his debts were usurious, in the absence of a showing that the same were void; or by the fact that part of the indebtedness was due to the officer and not to the bank.

**False representations:** rescission: damages. False representations knowingly made with intent to deceive, or a concealment of ma-

terial facts with like intent to induce one to incur an obligation which he would not otherwise have made are grounds for rescission, although no actual damage results.

**Principal and surety:** SALE OF PRINCIPAL'S PROPERTY: APPLICATION OF FUNDS. Where the principal, surety and creditor agree that the proceeds arising from the sale of the principal's property shall be applied on the guaranteed debt the surety may compel such application, where the fund has been unnecessarily diverted by the principal with the creditor's knowledge and assent.

**Same:** NECESSARY DIVERSION OF FUNDS: PLEADINGS. In this action the mere allegation of the surety that the proceeds of property sold by the principal, which the parties had agreed should be applied to the guaranteed debt, were used to defray expenses of the principal's business without the surety's knowledge, did not show a necessity for such use of the funds as to justify their diversion from the guaranteed obligation.

**Appeal:** MOTION FOR MORE SPECIFIC STATEMENT. Ordinarily an order requiring a party to make his allegations more specific is not appealable.

**Pleadings:** MORE SPECIFIC STATEMENT. A motion to make a pleading more specific by alleging matters of evidence and not ultimate facts; or requiring the statement of matters in avoidance of those already alleged in the pleading, should be overruled.

*Appeal from Polk District Court.*—HON. W.' H. McHENRY, Judge.

MONDAY, NOVEMBER 21, 1910.

DEFENDANTS are really plaintiffs in the action, for they are prosecuting a counterclaim against plaintiffs on two notes of $5,000 each, signed by J. K. Barnes as maker and guaranteed by M. H. Schussler. Plaintiff Schussler filed a reply to the counterclaim, consisting of two divisions, each division containing many paragraphs. Defendant Century Savings Bank filed a motion for a more specific statement and to strike many of the paragraphs of the reply or parts thereof. This motion was sustained in part and overruled in part, and plaintiff Schussler appeals.—*Reversed.*

*Guernsey, Parker & Miller,* for appellant.

*Dale & Harvison,* for appellees.

DEEMER, C. J.—The pleadings presenting the issues for our determination are very long and unduly prolix, and we shall have some difficulty in stating the case in ordinary compass so that it may be understood. The counterclaim is upon two promissory notes executed by plaintiff Barnes to the Century Savings Bank, each of which was guaranteed by plaintiff Schussler. Each note was for $5,000, and they were executed on December 1, 1906, due in seven and eight months from date, respectively. Schussler in reply practically admitted the execution of the notes, and pleaded the following matters, which were stricken out on motion, as a defense thereto:

Par. 6. That at the time of the execution of the notes sued upon and set forth in counts 1 and 2 of the defendant's cross petition, and, to wit, on or about the 23d day of November, A. D. 1906, the plaintiff J. K. Barnes, for the purpose of inducing this plaintiff to guarantee the payment of $10,000 of the amount proposed to be loaned to him by the defendant, did represent to this plaintiff in the presence and hearing of H. M. Whinery, then the cashier of the defendant Century Savings Bank that he, the said J. K. Barnes, was not indebted to the said Century Savings Bank or to any other person or corporation, save and except his indebtedness to this plaintiff, as hereinbefore set forth, and certain indebtedness to the defendant bank, which was said by him to be covered and secured by assignments of shipments of gun stocks theretofore made by the said Barnes. That at the same time and in the same conversation the said H. M. Whinery, as cashier of the defendant the Century Savings Bank, answering the specific inquiry of this plaintiff with respect thereto, falsely and fraudulently informed this plaintiff that the said J. K. Barnes was not indebted to the defendant the Century Savings Bank in any sum or amount whatsoever save and except for certain moneys theretofore loaned to the said

Barnes by said bank, as to which loans the said Whinery as cashier, then and there specifically stated and represented to this plaintiff that the said bank was amply secured, the said Whinery, cashier, then and there informing this plaintiff that said Barnes had assigned to the said Century Savings Bank the proceeds of certain shipments of gun stocks which the said Barnes had theretofore manufactured, and that said assignments were amply sufficient to cover and liquidate all of the indebtedness of the said Barnes to said bank on account of borrowed money or otherwise. That this plaintiff had no means of knowledge other than the said representations as to the indebtedness or financial condition of the said Barnes, and this plaintiff believed the said statements so made to him by the said Barnes and the said defendant by and through its said cashier, H. M. Whinery. . . . And this defendant further in relation thereto avers the fact to be that he entered into the said contract (Exhibit A), and into the said contract of guaranty indorsed upon the said two notes in full reliance upon the representations made him as aforesaid by the said Century Savings Bank through H. M. Whinery, its cashier, and by the said Barnes with respect to the financial condition of the said Barnes, and with respect to the indebtedness of said Barnes to the said Century Savings Bank and others. And this plaintiff avers the fact to be that he then had no knowledge or notice that the said Barnes was otherwise indebted to any person in any amount.

Par. 8. This plaintiff further avers the fact to be that he received no actual consideration whatever for the making of the said guaranty of the said notes and neither derived nor was to derive any advantage therefrom, save and except the possibility of the said Barnes being able to liquidate the indebtedness as aforesaid to this plaintiff out of the proceeds of the said walnut timber project after he had liquidated the said $20,000 loan in the manner and at the time described and set forth in the said contract (Exhibit A).

Par. 9. That notwithstanding the said representations of the said J. K. Barnes and of the said Century Savings Bank by and through H. M. Whinery, its cashier, as aforesaid with respect to the indebtedness and financial condition of said Barnes, the said Barnes and the defendant

bank and its said cashier well knew that at the time when said representations were made, and at the time when the said contract (Exhibit A) was made and entered into, to wit, November 23, 1906, and at the time when this plaintiff executed and delivered his guaranty to the said bank upon the two $5,000 notes sued upon, the said J. K. Barnes had contracted indebtedness to the Century Savings Bank aside from said $20,000 loan in a sum to exceed $22,000, and the said Century Savings Bank and its cashier, H. M. Whinery, well knew that the said J. K. Barnes was without means to pay the said indebtedness and to perform the terms of the said contract Exhibit A for the protection of this plaintiff. In relation to the said indebtedness of the said J. K. Barnes in fact existing and known to the defendant the Century Savings Bank, at the time of the execution of the contract (Exhibit A), and of the guaranty upon the notes sued upon, this plaintiff avers the fact to be that the said Century Savings Bank at that time held notes signed by the firm of Casebeer & Barnes, of which firm the plaintiff J. K. Barnes had been a member, in the sum of, to wit, $16,500. That the said notes were each and all also signed by the said J. K. Barnes individually, and that he had with defendant's knowledge assumed the payment thereof as between himself and his former partner, Casebeer. That at said time the said bank well knew that it did not hold security nearly sufficient to cover the said indebtedness. That, in truth and in fact, the said bank realized upon the security held by it at that time not to exceed the sum of, to wit, $12,000. That at the time of the execution of the contract, Exhibit A, and of the guaranty upon the notes sued on by this plaintiff the said Century Savings Bank and its cashier, H. M. Whinery, well knew that the plaintiff J. K. Barnes had agreed and undertaken, without the knowledge or consent of this plaintiff, to pay to the said Century Savings Bank and its said cashier a usurious bonus of, to wit, $5,000 as an inducement to said bank and said Whinery, cashier, to make to him the said $20,000 loan aforesaid. That the said bonus agreement of the said Barnes was evidenced as follows, to wit: By four notes of $1,000 each, which the said Barnes on or about the same date executed and delivered to the said H. M. Whinery, cashier, blank as to the name of the payee,

and which said notes are now held by the defendant the Century Savings Bank, also by one note of $500, dated November 5, 1906, due six months after date, which the said Barnes had executed and delivered to the said Whinery as a part of the said bonus agreement, and which note the said Whinery required the said Barnes to pay before maturity at the time the said $20,000 loan was paid upon the timber claim aforesaid, and also by a verbal undertaking of the said Barnes to pay to the Century Savings Bank the sum of $1,000 additional usurious bonus to the said bank for making the said loan of $20,000, the same to be paid in installments from time to time as payments were made by the said Barnes to the said bank to apply upon the loan notes as contemplated and specified in the contract, Exhibit A.

Par. 10. This plaintiff avers the fact to be: That at the time of contracting his obligations as guarantor of the notes sued upon, and at the time of the making of the contract (Exhibit A), and at all times prior thereto, he was without knowledge or notice of the existence of any of the said indebtedness and outstanding obligations of the said J. K. Barnes hereinbefore set forth. That by reason of the indebtedness and obligations aforesaid the said Barnes was hopelessly involved, and without reasonable prospects of being able to perform the terms of the contract (Exhibit A) in whole or in part. That, in truth and in fact, the said Barnes by reason of his said secret indebtedness to the defendant the Century Savings Bank was dispossessed of his said timber and factory at St. James, Mo., by the defendants on or about October 9, 1907, without the knowledge or consent of the plaintiff.

Par. 11. That had this plaintiff been truly informed by the said Barnes and the said Century Savings Bank of the facts with respect to the said indebtedness and financial undertaking of the said Barnes as then known to the said bank, this plaintiff would not have executed the guaranty upon the said notes sued upon by the defendant herein, and would not have executed the contract (Exhibit A), and could not have been induced so to do.

Par. 12. That, as this plaintiff is informed, the said notes or evidences of indebtedness secreted from this plaintiff as aforesaid are held by the defendant the Century Sav-

ings Bank as being wholly unpaid. That the plaintiff J. K. Barnes is insolvent, and that said tract of timber so purchased by the said Barnes and the manufacturing business instituted in connection therewith have been wholly wiped out.

From division 2 of the reply the following matters were also stricken:

Par. 4. That the said defendant bank, to further secure itself in the making of said loan to said Barnes, did, without the knowledge or consent of this plaintiff at the time, cause the title to the said tract of timber to be conveyed by the vendor, the Merimec Springs Park Company, to H. M. Whinery, defendant's cashier, as its trustee, and the said Whinery held title as such during all the times hereinafter mentioned.   .   .   .

Par. 6. That on May 25, and on June 20, 1907, respectively, the plaintiff J. K. Barnes, with the knowledge, advice, and consent of the Century Savings Bank, through its cashier, H. M. Whinery, sold two carloads of government gun stocks to F. Smith & Son, Clinton, Iowa, and upon their order shipped the same direct to the United States Arsenal at Rock Island, and the plaintiff J K. Barnes, with the knowledge, advice, and consent of the defendant bank and H. M. Whinery, its cashier, drew sight drafts upon the said Smith for the price and value of the said gun stocks, less the freight thereon, for the net sum of, to wit, $5,546, which said sight drafts were honored and paid by the said Smith & Son, and the proceeds thereof were deposited by the plaintiff Barnes to his credit at St. James, Mo., where his said factory was in operation, and the proceeds thereof were used in defraying the running expenses of the said factory and business. And this plaintiff avers the fact to be that all the said proceedings were had and done without his knowledge or consent, and in violation of the true terms of the agreement attempted to be expressed in and which is hereinbefore set forth as Exhibit A, which, in substance, provided, among other things, that gun stocks of the kind so sold to the said Smith should be sold to the United States Government, and the proceeds of all such gun stocks should be applied directly to the liquidation of

the particular indebtedness of J. K. Barnes described in the said contract (Exhibit A), and not otherwise.

Exhibit A referred to in these divisions of the answer reads as follows:

November 23, 1906. In consideration of the endorsements on two notes for $5,000.00 each signed by J. K. Barnes and payable to the Century Savings Bank of Des Moines, Iowa, payable in seven and eight months after December 1, 1906, such endorsements made by M. H. Schussler of Floodwood, Minn. It is understood and hereby agreed that by and between J. K. Barnes of Des Moines, the Century Savings Bank of Des Moines, Iowa, and M. H. Schussler of Floodwood, Minn., that said Barnes hereby agrees to turn over all proceeds derived from the sale of gun stocks to the U. S. Government (cut from certain land purchased from the Merimec Spring Park Co. in Crawford and Phelps Counties, state of Missouri) to the Century Savings Bank hereby agrees to apply all the moneys so received on the indebtedness of said J. K. Barnes for the purchase of the timber above referred to as follows: The first $10,000.00 so received to apply on and to pay notes given to Century Savings Bank by said J. K. Barnes dated December 1, 1906, and not endorsed by M. H. Schussler. The balance of all moneys so received by said Century Savings Bank to apply on and to pay certain notes dated December 1, 1906, and endorsed by M. H. Schussler until said notes are fully paid. And the next $5.000.00 to be paid to M. H. Schussler to apply on and to pay certain indebtedness of that amount contracted by Casebeer & Barnes with Coolidge-Schussler which indebtedness has been assumed by said Barnes. It is mutually understood and agreed by and between all parties hereto that in no event without the written consent of all parties hereto, shall any funds coming from the sale of any gun stocks to the U. S. Government cut from above mentioned lands be used for any other purpose than to liquidate the indebtedness herein referred to. J. K. Barnes. M. H. Schussler. Century Savings Bank. H. M. Whinery, Cashier. Witness: D. A. Byers.

Assuming arguendo that an appeal will lie from the ruling on the motion, the propositions presented, when reduced to the last analysis, are these:

(1)  Do the matters stricken from the first division of the reply constitute a defense to the notes?

(2)  Do the matters stricken from the second division present facts which entitle plaintiff Schussler to a credit upon the notes as between himself and the bank in the event he is to be held as a guarantor?

In the light of past decisions, there can be no doubt that the ruling on the motion to strike is an appealable one. *Seiffert v. Hartwell,* 94 Iowa, 576; *Mast v. Wells* 110 Iowa, 128; *Haworth v. Crosby,* 120 Iowa, 612, and cases cited.

1. APPEAL: motion to strike.

II. We shall first determine whether the matters pleaded constitute a complete defense to the action on the notes. As usual the rules of law relating to the duties of a creditor toward a surety, guarantor, or other accommodation maker are pretty well understood. The difficulty consists in their application. The paragraphs quoted from the first division of the reply clearly show an intent on the part of the pleader to show fraud on the part of the creditor, the savings bank, in securing Schussler's guaranty of the notes, and the vital question is:  Do these facts so pleaded amount to such a fraud as constitutes a defense to the guarantor?  Assuming, as we must, the truth of the allegations, we think they do present a case of fraud or concealment sufficient to constitute a defense. The rule of law is well stated in *Remington Co. v. Kezertee,* 49 Wis. 409 (5 N. W. 809), as follows:

2. PRINCIPAL AND SURETY: fraud: concealment of facts: pleadings.

The law is that if a person who contemplates becoming surety to another for the payment of money or the performance of any act by a third person applies to the creditor or person to whom the security is to be given

for information as to the nature, extent, and risk of the obligation, or the circumstances, condition, or character of such third person, the creditor, if he undertakes to give the information, is bound to disclose every material fact within his knowledge affecting the proposed liability. If the creditor conceal any fact unknown to the proposed surety, which, had he known it, would have deterred him from becoming surety (the latter not having the present means of ascertaining the fact, or, having such means, if artifice be used to mislead or throw him off his guard), it is a fraud upon him, and relieves him of his obligation. Especially is this so where the obligation of suretyship is entered into at the request of the person to' whom the security is given. In such a case perfect good faith is required of him who is to be benefited by the transaction, if he assumes to give the information; and, if that obligation is not observed by him (the surety not having other present means of information), the creditor can not successfully invoke the protection of the maxim caveat emptor to shield him from the consequences of his fraud. If authority is required for a proposition so obviously reasonable and just, the cases which support it (some of them in this court) will be found cited in the briefs of the respective counsel for the defendants. The person to whom the security is proposed to be given may refuse to give any information, and, if he so refuses, the maxim caveat emptor applies. The surety then incurs the liability at his own risk.

From our own case of *Bank of Monroe v. Anderson Co.*, 65 Iowa, 700, we also quote the following, which is in exact harmony with that announced by the Minnesota case:

We have thought it proper to lay down what we conceive to be the true rule as to the duty of a creditor, who is about to accept personal security for a debt due him, to inform the surety of facts within his knowledge which would have the effect to increase the risks or the undertaking of the surety. The contract of suretyship as a general rule is for the benefit of . the creditor, while the surety derives no advantage from it. Hence the law im-

poses upon the creditor the duty of dealing with the surety at every step of the transaction with the utmost good faith. If the surety applies to him before entering into the contract for information touching any matter materially affecting the risk of the undertaking, he is bound, if he assumes to answer the inquiry at all, to give full information as to every fact within his knowledge, and he can do nothing to deceive or mislead the surety without vitiating the agreement. And whether he is bound before accepting the undertaking of the surety and without being applied to by him for information on the subject to inform him of facts within his knowledge which increase the risks of the undertaking depends on the circumstances of the case. If there is nothing in the circumstances to indicate that the surety is being misled or deceived, or that he is entering into the contract in ignorance of the facts materially affecting its risks, the creditor is not bound to seek him out, or without being applied to, communicate to him information as to the facts within his knowledge. But in such case he may assume that the surety has obtained information for his guidance from other sources, or that he has chosen to assume the risks of the undertaking, whatever they may be. But if he knows, or has good grounds for believing, that the surety is being deceived or misled, or that he was induced to enter into the contract in ignorance of facts materially increasing the risks, of which he has knowledge, and he has an opportunity before accepting his undertaking to inform him of such fact, good faith and fair dealing demand that he should make such disclosure to him; and, if he accepts the contract without doing so, the surety may afterwards avoid it. This view of the duty of the creditor is supported by the following authorities: *Pidcock v. Bishop,* 2 Barn. & C., 605; *Owen v. Homan,* 4 H. L. Cas., 997; *Railton v. Mathews,* 10 Clark & F. 934; *Hamilton v. Watson,* 12 Clark & F. 109; *Franklin Bank v. Cooper,* 39 Me. 542; *Franklin Bank v. Stevens,* 39 Me. 532; *Graves v. Lebanon Nat. Bank,* 10 Bush (Ky.) 23 (19 Am. Rep. 50); *Stone v. Compton,* 5 Bing. (N. C.) 142; *Booth v. Storrs,* 75 Ill. 438; *Ham v. Greve,* 34 Ind. 18.

See, also, *Conger v. Bean,* 58 Iowa, 321; *Savings Bank*

*v. Boddicker,* 105 Iowa, 548; *Coles v. Kennedy,* 81 Iowa, 360; *Melick v. Bank,* 52 Iowa, 94; *Haworth v. Crosby,* 120 Iowa, 612; *Crossley v. Stanley,* 112 Iowa, 24.

We do not understand appellee to challenge these propositions; but it seeks to avoid them by various matters to some of which we shall now refer. It is argued that Schussler was a guarantor or surety for hire, and that the ordinary rules do not obtain in such case. The record does not support this claim; but, if it did, we are not impressed with the thought that fraud will not vitiate such an agreement.

Again, it is asserted that the statements made by the bank or its officers were matters of opinion, and not of fact, and that fraud can not be predicated thereon. The record does not sustain this claim. The alleged statements were of fact or were such matters of opinion that the guarantor was justified in relying thereon. *Coles v. Kennedy,* 81 Iowa, 360; *Galbraith v. Townsend,* 1 Tex. Civ. App. 447 (20 S. W. 943).

Again, there was according to the allegations of the reply such concealment on the part of the bank as amounted in law to a fraud. Further, it is argued that the fraud, if any, was on the part of Barnes alone, and that the bank was in no way connected therewith. This thought is distinctly negatived by the allegations stricken from the reply.

Moreover, it is contended that Schussler joined in the main case originally brought for the cancellation of the notes, was defeated in his action, appealed to this court, but, before the matter was submitted dismissed his appeal as is shown by the opinion filed in the case reported in 147 Iowa, 267. Based upon this, the argument is made that by election or estoppel Schussler is in no position now to question the validity of the notes. It will be observed that res adjudicata is not relied upon, for there has been no judgment

3. SAME: election of remedies: estoppel.

so far as shown, either as to Barnes or as to Schussler. Moreover, no pleading has as yet been filed in the case raising the question of election or estoppel. Indeed, there is no showing as to the results of the former litigation, save that this is the same case as the one in which the appeal was taken—resting now upon the counterclaim filed by the bank. Surely there has been no election of remedies for the pleadings are in the original case, which is yet undisposed of. *Smith v. Bricker,* 86 Iowa, 285; *Clapp v. Greenlee,* 100 Iowa, 586. Estoppel is not pleaded, but, if it were, no such facts are shown by this record as would estop Schussler from interposing the defense of fraud. The cases hitherto cited support this view.

Another proposition is that some of the alleged debts of Barnes were and are void and of no effect because usurious in character or without consideration. There is no such showing in the pleadings now before us.

4. SAME.

Barnes is the only person who could plead usury, and, as the notes were negotiable in character, he could not plead either usury or want of consideration in an action brought by a bona fide holder. The point here is that no such facts are pleaded as would avoid the notes.

Another claim that some of the indebtedness was due an officer of the bank, and not to the bank, and that the representations as to Barnes' indebtedness by the officers of the bank was not binding on the bank because not made with reference to the obligations held by the bank is clearly without merit. The material inquiry was the amount of Barnes' debts no matter to whom owing.

The main proposition in this connection made by appellee is that, as Barnes was hopelessly insolvent when Schussler became guarantor, the ordinary rules do not apply,

5. FALSE REPRE-
SENTATIONS:
rescission:
damages.

for the reason that it appears that Schussler was not in any manner injured by the misrepresentations of the bank. It must not be forgotten in this connection that the fraud relied upon

by Schussler went to the very inception of the contract. It does not relate to any matter of fraud occurring after the contract was entered into; but to the inducements leading to the execution of the notes in suit. With this distinction in mind, it is apparent that the question of damage is not a material inquiry. The controlling thought here is that the contracts were secured by fraud and misrepresentation. In such cases the contract may be rescinded, even though it appears that under some circumstances it might prove beneficial. On this point we quote the following from Page on Contracts, sections 128, 146, as follows:

The proposition that damage is a necessary element of misrepresentation means nothing more than this: That the party seeking relief must by reason of this misrepresentation have incurred some liability substantially different from that so represented to him. Wherever misrepresentation is operative and rescission is given, it is given, although in that case the misrepresentation has not caused any financial loss. . . . In some cases rescission is refused where no actual damage exists, as inducing purchase of coal land by false statements as to the output where the land is as valuable as represented. This rule can not be sustained on sound principle. To hold that one must accept a legal right different from that promised him because it is as valuable in money is to ignore a fundamental principle of contract law. Accordingly many courts hold that false representation made knowingly with intent to deceive, causing deception and thereby inducing one to make a contract he would not otherwise have made, are grounds for rescission, though no actual damage follows.

The cases cited support the text and the rule announced is fundamentally sound. See, also, *Coles v. Kennedy,* 81 Iowa, 360. Many of the contentions made by appellee in support of the court's ruling are without support in the record as it now appears. For example, certain statements are made regarding the nature of the original suit which do not appear in the record. Moreover, many assumptions

are made by appellee's counsel which may be true in fact, but which do not appear in the printed record. We must decide the case upon the facts as they appear, and not upon something counsel may have in mind as being the ultimate facts. Taking the allegations stricken from the first division of the reply as, true, it is manifest that the trial court was in error in striking them out.

III.    As to the matters stricken from the second division of the reply, we are constrained to hold that there was also error here. The allegations referred to pleaded the con-

6. PRINCIPAL AND SURETY: sale of principal's property: application of funds.

tract between the parties known as "Exhibit A." By the terms of this agreement, the bank undertook to use the proceeds of certain sales in a given manner, and it was expressly stipulated: "It is mutually understood and agreed by and between all parties hereto that in no event without the written consent of all parties hereto, shall any funds coming from the sale of any gun stocks to the U. S. government cut from above mentioned lands be used for any other purpose than to liquidate the indebtedness herein referred to." The reply pleaded a diversion of these funds in a manner contrary to the terms of the agreement. To the extent of this diversion plaintiff Schussler was prima facie entitled to credit upon the obligations guaranteed by him, or to have the amount applied on Barnes' indebtedness to him.

But appellee says that, as the money received was used in defraying the running expenses of the factory and business, plaintiff may not complain of the diversion. This

7. SAME: necessary diversion of funds: pleadings.

contention can not well be determined upon motion. The admitted facts do not show that these expenses were necessarily defrayed from the funds received by the bank. Unless this sufficiently appears, the bank could not absolve itself from its agreement to use the funds in a particular manner. In other words, there is no sufficient showing in the parts

stricken from the reply of a necessity for the diversion of the funds. What the truth may be in this respect we do not know. Upon the face of the pleading attacked, there is not enough disclosed to justify the bank in turning over the proceeds of the sale to Barnes to be used to defray running expenses of the factory.

IV. That part of the ruling requiring plaintiff to make the allegations of his reply more specific would not ordinarily be appealable. However, as the case is prop-

**8. APPEAL:** motion for more specific statement.

erly before us on the motion to strike, it may not be out of place to say that the first paragraph of the third division of said motion should have been overruled for the reason that it calls for a statement of evidence rather than of ultimate facts.

The same observation may be made as to the second paragraph which asks plaintiff to state the facts fully and completely constituting the alleged mistake. The third

**9. PLEADINGS:** more specific statement.

paragraph of the motion called for a statement as to matters purely in avoidance of the facts pleaded by plaintiff and defendant was not entitled thereto, and the same observation may be made regarding the fourth paragraph of the third division of the motion. The matters called for were not necessary to plaintiff's defense to the note. In so far as material, they should be pleaded by defendant in reply to the defensive matter pleaded by plaintiff. The rulings on the motion which have been specifically referred to in this opinion were erroneous, and they must each and all be, and they are, *reversed.*