**STEVENS v. FARMERS FIRST NAT. BANK OF STEPHENVILLE et al.**

No. 1736.

Court of Civil Appeals of Texas. Eastland.

Jan. 7, 1938.

Rehearing Denied Feb. 25, 1938.

Chandler & Chandler and A. P. Young, all of Stephenville, for appellant.

J. A. Johnson and Oxford & McMillan, all of Stephenville, for appellees.

LESLIE, Chief Justice.

The Farmers First National Bank of Stephenville instituted this suit against W. R. Stevens on a note amounting to $576.71, executed to it by Stevens and to foreclose a second lien securing the same on 318.45 acres of land in Erath county. The Federal Land Bank of Houston held a first lien against the land for the balance of a $1,700 indebtedness. After the suit was filed and before it was tried, the tract of land was sold by the Land Bank and bid in by that bank at a trustee's sale for $1,000. Thereafter the plaintiff amended his petition, seeking judgment against Stevens only, and without foreclosure of any lien.

The defendant Stevens answered and made Clarence Helms a party, seeking judgment against him for any amount said plaintiff might procure judgment against Stevens. In making Helms a party, Stevens alleged that on November 2, 1935, he executed and delivered to Helms a deed conveying to him said 318.45 acres of land, and that as a part of the consideration for such conveyance the said Helms assumed the payment of said indebtedness of $576.71, as well as other items of indebtedness secured by a lien on said land. The right of the plaintiff to a personal judgment against Stevens was recognized and the lawsuit proceeded to trial on the issues raised by the pleadings of Stevens over against Helms and the latter's answer thereto. A trial before the court and jury resulted in a verdict upon which

judgment was rendered in favor of Helms, and Stevens appeals.

In response to Stevens's pleading making him a party on his contract of assumption, Helms appeared and alleged that in the exchange of lands between himself and Stevens about November 2, 1935, he had been defrauded by Stevens, and that by reason thereof he was entitled to a rescission of the deal between them and the cancellation of the deed whereby he (Helms) purported to have conveyed to said Stevens his undivided one-thirteenth interest in 980 acres of land situated in Fisher county, Tex., for Stevens's 318.45 acres of land in Erath county. The transaction was in fact an exchange of lands effected by the parties in this manner: Helms and wife conveyed their Fisher county land to Stevens by deed reciting "$10.00 and other valuable consideration." And in turn Stevens and wife conveyed the Erath county land to Helms for a recited cash consideration of the sum of $2,000 and the agreement on the part of the defendant (Helms) to assume and agree to pay (1) taxes on Erath land amounting to $356.30; (2) unpaid balance on $1,700 owed by Stevens to Federal Land Bank, and (3) the balance of $576.71 (involved in this suit) owed by Stevens to plaintiff and secured by a second lien.

April 7, 1936, the Federal Land Bank foreclosed its deed of trust lien on the 318.45 acres of land and bought it in at the sale. Helms made no effort to prevent or avoid such sale, and he and Stevens both alleged financial inability to do so at the time.

Helms contests Stevens's right to a judgment against him for any amount for which the bank might take judgment against Stevens on the specific grounds that in the exchange of lands Stevens perpetrated a fraud on him in the manner reflected by the following excerpt from his pleading:

"This defendant (Helms) shows to the court, that sometime prior to the date of the execution of said deeds, defendant and W. R. Stevens negotiated with each other in an effort to trade the land owned by the defendant (in Fisher County) to W. R. Stevens for the lands conveyed to him located in Erath County, and that said trade was finally consummated on the dates of said deeds. That the said Stevens, at the time and before defendant executed his deed conveying said land to said Stevens, stated to defendant that there were debts against said land owned by him (Stevens) as above enumerated. That he (Stevens) had made arrangements with the Federal Land Bank and with the Farmers First National Bank of Stephenville to renew said notes and deeds of trust and give him all the time desired by him in order to pay the same. That said bank had agreed to extend the time of payment of its note and deed of trust, to be made in small payments, and that the Farmers First National Bank, had agreed with him, the said Stevens, to allow him all the time he desired to pay the note and deed of trust held by it against the lands conveyed to this defendant, and at the same time stated to the defendant (Helms) that he would guarantee to him that said agreement so made by said land bank and said First National Bank would be carried out by said banks, in the event said trade was completed, and further stated to the defendant, that he had talked to the Farmers First National Bank and they had agreed to carry the note and to postpone the date of payment on same to suit the convenience of this defendant, should a trade be consummated. And this defendant further says, that the above and foregoing representations made to him by said Stevens, was the consideration for the execution of the deed by him to the said Stevens conveying the land in Fisher County described above, and but for the said representations this defendant would never have parted with the title to his land.

"And this defendant further alleges, that prior to the time said trade was made between him and the said Stevens, the said Stevens stated to him and assured him that he could secure the postponement of the payment of said notes, that he knew it would be agreeable with the Land Bank and said Stephenville Bank to postpone the due dates of said notes, and assured him (Helms) that he need have no uneasiness as to being pushed on said notes; that he (Stevens) had made arrangements with said banks to extend said notes and give him time to pay for said land in small payments, and further stated to the defendant Helms that he would guarantee that he would have no trouble in securing an extension of said notes so that they could be paid by him in small payments. That said statements hereinbefore alleged, each and all were false and untrue."

Helms further alleged that he believed said statements and with faith therein closed the transaction, delivering to Stevens a deed to the Fisher county land; that said Stevens

had not made arrangements for the extension of said debts either for himself or his grantee; and that, as a result of his failure to do so, the said Federal Land Bank foreclosed its first mortgage on the land, and the Stephenville bank brought suit on its debt. Upon such showing Helms seeks to rescind the deal and cancel his deed conveying the Fisher county land to Stevens.

On the trial of the case the court submitted to the jury special issues in response to which the jury found: (1) That W. R. Stevens, at the time or prior to the execution of the deed by Helms and wife to the 80 acres of land in Fisher county, stated and represented to Helms that he (W. R. Stevens) had made arrangements with the Farmers First National Bank of Stephenville and the Federal Land Bank to carry the notes and to postpone the payments thereof; (2) that the statements "made by W. R. Stevens * * * were untrue"; and (3) "that Clarence Helms relied upon said statements * * * in making the deed to the Fisher County land."

No other issue bearing upon fraud actually warranting rescission was submitted by the court, or requested by any one. Obviously there is no jury finding that the value of the Erath land received by Helms was of less value than that conveyed by him to Stevens. Such fact is not conclusively shown by the testimony. Helms pleads and proves that the $10 recited to have been paid by the deed from him to Stevens was not paid, and that the $2,000 recited as a cash consideration in the deed from Stevens and wife to himself was not paid in cash. Concerning the deal and the recitation of $2,000 cash paid, Helms affirmatively alleges "that as a matter of fact the whole transaction was a trade of the two tracts of land, and the said W. R. Stevens knew and understood that he was not receiving any $2,000 at said time, but that the $2,000 mentioned in said deed represented the value of the Fisher County land owned by said Helms."

From this it is logically certain that the parties estimated the equity of Stevens in his 318.45 acres of land to be the equivalent of the value of the Fisher county land admitted to be free of encumbrance, and apparently conceded by all parties to be of the value alleged. The correctness of this conclusion (warranted by the record) is emphasized by the fact that Helms in taking the transfer to himself of the Erath land expressly assumed all outstanding indebtedness and liens against that 318.45 acres of land. Further, and as above noted, the suit is predicated on the fraud, not by reason of false representations pertaining to land values or equities therein, but on Stevens's failure to have debts extended, as he is alleged to have falsely represented that he had already done. Undoubtedly the Stevens land and the Helms land had a value, and such was the basis of the exchange now sought to be set aside and canceled on the ground of fraud. For aught this record shows, at the date of the exchange of land the Stevens equity in the 318.45 acres of land was the equivalent of the value of the Helms land in Fisher county.

On its face no other interpretation can be given the transaction. On such state of pleading and testimony, no showing is made for rescission and cancellation as contended for by Helms.

In Bryant et al. v. Vaughn, Tex.Sup., 33 S.W.2d 729, 730 (a case passing through this court, 1 S.W.2d 667), the Supreme Court said:

"The rule in this state is settled that the equitable remedy of cancellation is not available because of fraudulent representation made to induce the execution of a contract unless it be shown in connection therewith that some injury or damage has resulted to the party claiming to be aggrieved. Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S.W. 1034, 258 S.W. 462, 51 A.L.R. 1, and authorities there cited.

"The rule announced in the above case bars defendants in error's right to rescission of the trade in view of the jury's finding that the value of the property received by them was equal to that with which they parted possession."

The Supreme Court applied the same rule in deciding the case of Lane v. Cunningham, Tex.Com.App., 58 S.W.2d 35, 36, appealed from this court. It is there said: "The question of controlling importance relates to the relief sought and obtained by the Cunninghams in respect to the false representations made by Lane. The established rule is that where the equitable relief of cancellation or rescission is sought, on account of fraud, a court of equity will not grant such relief unless the complaining party has suffered pecuniary damage as a result of the fraud."

Further on it is stated in that opinion: "The above rule of equity should not be confounded with the measure of damage in suits at law for the recovery of damages

for fraud, as provided in article 4004 of the statutes. * * * The Cunninghams, as already indicated, do not seek damages on account of the alleged false representations of Lane, but seek relief in equity by way of cancellation or rescission. They have failed to present, by either pleading or proof, a case calling for such relief. It is manifest from the record that the case was tried and decided in the trial court on the erroneous theory that, *regardless of the absence of a showing of resulting injury,* the alleged false representations of Lane afforded ground for cancellation as sought by the Cunninghams. Lane, in various ways, duly preserved his right to complain of the rulings of the trial court involving the application of the erroneous theory upon which the case was tried and decided. The fact that there was testimony to show, and the jury found, that the deed in question was never delivered, and therefore never became effective, does not render harmless the errors committed by the trial court in the other respect." (Italics ours.)

It was thus held in the above authorities that the parties to an exchange of lands were not entitled to get back a farm where they neither pleaded nor proved that the farm was worth more than the hotel they received, notwithstanding the fraud of the other parties. There was an absence of pleading and proof of pecuniary damages, and the rule of law has application in the instant case and controls the disposition of this appeal.

As in the Lane Case, the appellant preserves in various ways his right to complain of the correctness of the judgment. The trial appears to have been upon a mistaken theory of law. Since the pleadings will doubtless be recast upon another trial, other points presented by the appeal will doubtless not arise.

The judgment of the trial court in favor of appellees Clarence Helms and wife, Olalee Helms, against W. R. Stevens is in all things reversed and the cause remanded, and the judgment in favor of said Farmers First National Bank of Stephenville against said W. R. Stevens, as well as the judgment in favor of Mrs. Alice Stevens against said bank, in all things remains undisturbed. It is so ordered.

## On Rehearing.

Since the original opinion in this case, the appellant and appellee have each filed an able motion for rehearing and we have re-examined the points presented by the appeal. Originally we thought the holding of the Supreme Court, as evidenced in Bryant v. Vaughn, Tex.Sup., 33 S.W.2d 729, and Lane v. Cunningham, Tex.Com.App., 58 S.W.2d 35, to be controlling, and we set forth the reasons impelling that conclusion. It is unnecessary to restate them here.

In our re-examination of these questions we came upon the recent opinion from the Supreme Court in the case of Nance v. McClellan et al., 126 Tex. 580, 89 S.W.2d 774, 775, 106 A.L.R. 117, by Judge Smedley, Commissioner. Our attention was not called to this authority in the briefs or in the motions for rehearing, and it escaped our notice. For reasons presently to be stated we think the principles therein stated applicable to the facts of this case, requiring a different conclusion on some of the issues deemed by us controlling in the first disposition of the appeal. This arises in part from the ruling we now make on the issue of ratification not before believed material.

The opinion in Nance v. McClellan, supra, discusses and, in a manner, distinguishes the opinion in the Vaughn and Lane Cases. It certainly does make some significant explanations of those opinions and, while they were not in so many words expressly overruled, it is, we think, quite apparent that those authorities are now properly confined within very narrow limits. In any event, as explained or distinguished, said opinions are rendered substantially inapplicable to the facts of this record, at least in the sense in which we applied them in our original opinion. In other words, in that opinion we were influenced by such expressions as that to be found in the opinion in Lane v. Cunningham, supra, namely: "It is manifest from the record that the case was tried and decided in the trial court on the erroneous theory that, *regardless of the absence of a showing of resulting injury,* the alleged false representations of Lane afforded ground for cancellation as sought by the Cunninghams." (Italics ours.)

Believing such expressions reflected the true interpretation of the Supreme Court's holdings in those cases, we adopted the same and proceeded upon the theory (in our original opinion in this case) that, inasmuch as the equity of Stevens in the Erath farm was the equivalent of Helms's equity in the Fisher county land, no pecuniary damage or injury was shown to have been sustained by Helms entitling him to the equitable remedies of rescission and cancellation in

the purview of said authorities. The instant case was believed to be one in material respects essentially the same as the principal cases.

■ The opinion in the Nance Case recognizes that there are many authorities (some in Texas) holding that "pecuniary damage is not essential to fraud available as the basis for rescission of a contract," and then reaffirms the rule in Texas (stated to have been announced in Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S.W. 1034, 258 S.W. 462, 464, 51 A.L.R. 1) "that proof of pecuniary damage must be made in a suit to rescind for fraud, as well as in an action for damages." Further pointing out what was held in the last-mentioned authority, it was also said: "The opinion in Russell v. Industrial Transportation Company, supra, recognizes that the general rule which it announces is not without qualification when it states that the word 'damage' should not be restricted to monetary loss, and that *it is sufficient if the defrauded party has been induced to incur a legal liability or obligation different from that represented or contracted for.*" (Italics ours.) This reference is no doubt to that portion of the opinion in Russell v. Industrial Transportation Co., supra, reading as follows:

" 'False representations knowingly made with intent to deceive, or a concealment of material facts with like intent to induce one to incur an obligation which he would not otherwise have made are grounds for rescission, although no actual damage results.' [Barnes v. Century Savings Bank, 149 Iowa 367, 128 N.W. 541].

"The facts of the case showed that the complaining party had by fraudulent representations been induced to incur an obligation which but for same he would not have incurred. He had not actually suffered damage, but would do so unless the contract was canceled. Therefore injury was shown."

Applying these principles to the verdict in the instant case, we conclude that the record amply shows that the alleged fraudulent representations by Stevens to the effect that he had made arrangements with said banks to carry said notes and postpone their payment induced appellee Helms to accept the deed to the Erath farm, and assume said obligations (evidenced by Stevens's deed to Helms) which, in the absence of such representations, he would not have incurred. The fraud, if any, imposed on Helms property covered by a debt and lien past due and pressing for payment which is quite different from property covered by a debt and lien but the payment of which has been extended. If said representations by Stevens induced Helms to convey his Fisher county land and incur or assume said obligations which he would not have otherwise incurred, fraud was just as definitely established as if Stevens had by such means put off on Helms property differing in physical identity from that he contemplated or understood he was purchasing. Therefore, we conclude that the verdict definitely establishes the fraud alleged and that the judgment of the trial court as between Helms and Stevens should be affirmed, unless other assignments raise questions precluding that disposition of the case.

■ By various assignments and propositions the appellant, Stevens, complains that the court erred in not instructing a verdict in his behalf and in failing to render such judgment notwithstanding the verdict. One of these contentions advanced and emphasized is that, if any fraud was ever committed by Stevens, as alleged, Helms waived the same, ratified the transaction, and is not now entitled to the equitable remedy of rescission and cancellation. In other words, appellant invokes the rule of law stated in Adams v. Hill, Tex.Civ.App., 149 S.W. 349, 351, writ refused, to the effect that parties seeking relief "were not necessarily entitled to a rescission merely because they had established fraud, but the burden was upon them to show the fraud, and that they were entitled to the equitable remedy of rescission in relief."

To the same effect is Dalton Adding Mach. Co. v. Wicks & Co., Tex.Civ.App., 283 S.W. 642; J. B. Colt Co. v. Head, Tex. Com.App. 292 S.W. 198; Powell v. Rockow, 127 Tex. 209, 92 S.W.2d 437; 7 Tex.Jur. p. 991, § 64; Black on Rescission & Cancellation, vol. 2, § 620.

■ With these principles and authorities in mind, how stands the appellee's right to rescission and cancellation? The record and the testimony disclose the following undisputed facts:

The deed from Helms and wife to Stevens conveying the Fisher county land was executed and delivered November 1, 1935. That of Stevens and wife to Helms, about November 2, 1935. Immediately thereafter, and certainly before November 9, 1935,

Helms wrote the Federal Land Bank of Houston the following letter:

"No. 56203, Stephenville, Texas

"Dear Sir: In regard to the note & loan you made on the old W. R. Stevens place, Vol. Number 9 page 111 of Erath Texas,

"I have took upon myself this place, with all these past 'due payments on it, I have given W. R. Stevens my 13th equity in 1 and ¾ sections of land in Fisher County which amounted to $2,000.00 it is clear. I have in the Bank of Rotan about $40 and will send it to you, and will meet all payments as they come and will pay some on what is behind every time. I sure hope you can help me own a home in Erath. I am sorry W. R. has done so bad on his note. I hope I may have a chance. Consider me as a man.

"Yours truly
"[Signed] Clarence C. Helms. Stephenville, Texas General Delivery.

(over)

"The forty dollars I have in the Bank is undivided but I will get it by the first and will gladly turn it to you. I am just a farm boy wanting a chance."

Rubber Stamped, second sheet:

"Received Nov 9 1935.

"Federal Land Bank of Houston

"Depts. Notified 11–12–35 Change of address ———

"Change of Ownership ——— OD"

It is the appellant's view that this letter was written by Helms after he had been informed by letters direct from the Land Bank that the indebtedness to that bank would no longer be carried or extended; that at the time he wrote it he was fully aware of the fraud, if any; and that with such knowledge he, thereafter on January 6, 1936, executed and delivered a written lease on the Erath county farm extending from January 1, 1936, until January 1, 1937.

Concerning the writing of the above letter and the date he first learned the Houston bank would not carry the notes, etc., Helms testified:

"Q. Now, when was the first time, Helms, that you found out that they wouldn't carry these notes—that the bank down here at Houston wouldn't carry the notes? A. I guess it was somewhere around a month.

"Q. When did you finally get your deed away from those fellows? [Agents promoting the exchange.] A. About three weeks. * * *

"Q. How long after you got your deed, boy, until you heard from the Land Bank, or found out they were not going to carry these liens? A. Right around two weeks.

"Q. After you got your deed? A. Yes, they began writing me letters telling me they were going to close it out if I wasn't going to pay off; I didn't know what was wrong.

"Q. Did you write a letter to the Land Bank? A. I did.

"Q. All right; there don't seem to be any date on this letter (Counsel looks at the letter in the deposition.) Was it after you had gotten a letter from the Land Bank? A. I think I had gotten about two letters from the Land Bank.

"Q. Then you wrote them this letter, did you? A. Yes, sir.

"Q. What was your purpose in writing a letter; what was you going to do? A. I saw that I had been beat out of everything I had—* * *

"Q. The court rules that you can answer; What was the purpose in writing this letter? A. I saw I was done beat out of everything I ever had; and everything I ever intended to have before, and that if I could get ahead and get them to carry it I could probably hold out some little something out of it.

"Q. Is why you wrote this letter to them? A. Yes, sir.

"Q. Was that land sold? * * * A. Yes, sir. * * *

"Q. Tell the jury when you decided that you couldn't—that you had been wronged and defrauded out of your property—when was it—how long was it before you got this deed on the second day—this deed was written—how long was it after the second day of November that you decided that you had lost your stuff and thought you could not pay these debts if they were going to demand them now? A. Somewhere around six weeks."

Obviously, Helms was estimating time from November 2, the date of his deed, although it is undisputed that the above undated letter was received from him by the Houston Bank not later than November 9, 1935. Whether the information that the bank would demand the payment of its note and interest was received by Helms November 2, 1935 (as testified by Stevens and others), or he received that information on some other date prior to November 9, or received it as much as six weeks after November 2, it is clearly established by his tes-

timony that he became thoroughly cognizant of the fraud, if any, long before he executed the farm lease on the land of date January 6, 1936, for which a consideration of $138 was received, $5 of which was paid as commission to the agent instrumental in effecting that transaction, and the other $133 paid to the Federal Land Bank on past-due interest.

Concerning the rental contract which seems to have been negotiated by Helms's father-in-law and the land agent, Helms testified as follows:

"Q. Well, did you sign the contract? A. I did.

"Q. Did you read it? A. I did. Me and my wife both.

"Q. All right, well, why did you sign that contract? A. Well, I thought if I could go ahead and do anything at all with it— * * I just though if I could get anything at all out of it; my father-in-law was an older man than I was; if I could get anything out of it at all it would be better than losing it all. I had just thrown up my hands. * * "

The lease contract provided that the premises should be used for "farming and grazing only"; that the lessee, R. Kring, should replace all glass that was broken, etc.; and that, if the lessee failed to comply with the covenants, Helms was entitled to declare the lease forfeited and repossess the entire premises.

In this connection, it will be borne in mind that the original suit by the Farmers First National Bank of Stephenville against W. R. Stevens et ux. only was filed December 31, 1935. Thereafter, Stevens on April 14, 1936, in response to the bank's pleading, filed what is styled his "Original Answer and Cross-Action" bringing Helms into the suit and seeking a judgment against him on the assumption evidenced by the deed from himself to Helms of the Erath county farm. This pleading was amended June 11, 1936. These pleadings upon the part of Stevens were answered by Helms in what he designated as his answer and cross-action filed May 21, 1936. In this pleading he set up the fraud with which he charged Stevens, and for the first time sought the cancellation of the deed he had made Stevens to the Fisher county land. It is stated by appellant that Helms had not, prior to May 21, 1936, repudiated the deal with Stevens, and had not theretofore tendered back the Erath county land with the view of restoring the original status quo of Stevens. We have searched the record and do not find any evidence that

Helms made any earlier express repudiation of the original deal between him and Stevens.

As between Stevens and Helms a trial was had, as stated in our original opinion, and judgment therein rendered in favor of Helms on October 23, 1936. This was at a time when the farm lease was in full force and effect as between Helms and the lessee, R. Kring.

On the trial below Helms merely comes in and offers for cancellation the deed which Stevens made to him of the Erath county land and asked the court to cancel in his behalf the deed to the Fisher county land which he had theretofore made to Stevens. No other effort was made to restore to Stevens the Erath county land which had, as a matter of fact, been sold by the Land Bank under a deed of trust and bought in by that bank as far back as April 7, 1936, a considerable time prior to the trial of this case in which judgment was rendered October 23, 1936.

Helms' version of the facts leading up to and involved in this transaction was stoutly denied by Stevens and other witnesses who testified. But in our analysis of the testimony we disregard appellant's testimony, looking solely to that tending to support the appellee's case. In doing so, however, we conclude that the record shows as a matter of law that Helms completely failed to establish that he was entitled to the equitable relief of rescission. His own testimony demonstrates that he waived the right of action for rescission by voluntarily accepting benefits under the deed from Stevens and wife to himself.

In legal effect, the facts of this case are quite like those in Chambers v. Grisham, Tex.Civ.App., 157 S.W. 1177, writ refused, wherein it was held, as stated in the syllabus: "In an action to rescind a contract for the exchange of property on the ground of fraud, where it appears that the plaintiff had permitted the foreclosure of the lien for notes, which he agreed to pay, against part of the land received by him, and cannot restore the status quo, it was proper for the court to give a peremptory instruction for the defendant."

In Koppe v. Koppe, 57 Tex.Civ.App. 204, 122 S.W. 68, it was held that the effect of giving a mortgage on the property by the purchaser, with full knowledge of the fraud for which rescission is asked, constituted an act upon his part, recognizing and affirming the transaction and thereby precluding re-

scission and cancellation. The execution of a farm lease in full effect at the date of the trial and judgment should be held the equivalent, in matter of ratification, to the execution of a mortgage. 9 C.J. p. 1198, §§ 77, 78, 79.

In a manner the issue of whether or not Helms ratified the original transaction was submitted by the court to the jury, and in connection therewith there was given upon the theory of "explanation" an instruction. Both features of the issue are strenuously objected to on various grounds raised in the assignments of error, and predicated upon exceptions made to the charge. Under the disposition we find it necessary to make of this appeal, it becomes unnecessary to pass on these questions.

From what has been said it follows that the appellee's motion for rehearing is overruled, and the appellant's motion for rehearing, seeking a rendition of the judgment, is granted.

For the reasons assigned, the judgment of the trial court in favor of the Farmers First National Bank of Stephenville against W. R. Stevens is in all things affirmed, and the judgment in so far as it denies Stevens a recovery against Clarence Helms on his assumption of the debt in suit, as well as the judgment canceling the deed from Helms and wife to W. R. Stevens of the Fisher county land, is reversed and in each respect here rendered in favor of Stevens.

In the above respects the judgment of the trial court is affirmed in part and reversed and rendered in part.