## HAIRALSON *v.* CARSON.

1. A court of equity will not decree the cancellation of a paper when so doing is in no way essential to the protection of the party seeking such relief.
2. Even if a prayer for "general relief" can, under any circumstances, be treated as a prayer for an injunction, a petition which has no standing in court as one for injunction otherwise than by virtue of the general prayer, and which is in other respects without equity, will not be retained when it is apparent from the petition itself that the plaintiff is not seeking an interlocutory injunction, by which alone he could be afforded adequate relief, and that a permanent injunction after a final hearing would be unavailing.

Submitted May 22, — Decided June 6, 1900.

Equitable petition. Before Judge Smith. Telfair superior court. October term, 1899.

*D. C. McLennan*, for plaintiff.

LUMPKIN, P. J. The plaintiff in error, W. H. Hairalson, brought a petition against J. R. N. Carson alleging, in substance, the following: Hairalson purchased from Carson certain sawmill machinery, and gave for the same a negotiable promissory note, due on the 1st day of December, 1899. The instrument embracing the note also contained a mortgage on the property purchased. The defendant fraudulently represented to the plaintiff at the time of the sale that the machinery was in good condition, in first-class order, and would do good work; whereas it was very inferior in character, badly worn, "almost wholly worthless and of no value at all." A portion of the machinery belonged to one Bankston, to whom the plaintiff was compelled to surrender it. Upon inquiry, plaintiff ascertained that the rest of the machinery had been sold to the defendant by Redmond & Wilson, which firm "had a mortgage on it and a reservation of title until the same was paid for, and that the purchase-price is still due by the said Carson." As soon as the plaintiff became apprised of these facts, he offered to rescind the contract, but Carson declined to do so. The pe-

tition concludes as follows: "Petitioner alleges that the said J. R. N. Carson is insolvent, and that without the aid of the State's writ of injunction he is without remedy in the event that said Carson should trade said note and mortgage to an innocent purchaser without notice, and thereby prevent the defense of nudum pactum or failure of consideration." "Petitioner avers that the said defendant is trying to dispose of said note and mortgage, and fears that he will trade the same to some innocent purchaser, and that he. will thereby.be cut off from his defense against the enforcement of the collection of the said note and mortgage." "Petitioner alleges that said note and mortgage is entirely without any consideration, and was obtained by the fraudulent representations of the said J. R. N. Carson made to petitioner, relative to said sawmill" machinery. "Wherefore, petitioner prays that the said note and mortgage be delivered up and canceled as being fraudulent and without consideration, and that process do issue requiring the defendant, J. R. N. Carson, to be and appear at the next October term, 1899, of Telfair superior court, to answer your petitioner's complaint, and that he have such other and further relief as he is entitled to." At the appearance term of the court, the plaintiff's petition was dismissed on demurrer, and he excepted.

1. Treating the petition as one for cancellation merely, it is manifestly without equity. The superior court will not, in the exercise of its chancery powers, grant relief when it is in no way essential to the protection of the party seeking it. This is a fundamental principle of equity jurisprudence, and rests upon the simple reason that a court will not do a thing which is entirely useless. As between Hairalson and Carson, there was no need for cancellation ; for, in the event of an attempt by the latter to enforce the collection of the note by legal proceedings, Hairalson would have nothing to do but to interpose his defense and thus prevent the rendition of a judgment against him.

2. The only need which Hairalson really had for equitable relief was to prevent Carson from transferring the note before its maturity to an innocent purchaser, who would have the right to collect it without regard to the equities between Hairalson and Carson. It is to be observed, however, that although the plaintiff alleged facts which would have warranted the grant-

ing of such relief, he did not undertake to pray for the same. It is certain that his petition did not contain a specific prayer for injunction. It does contain a prayer for general relief, but we are clear that he was not entitled, for this reason, to have his petition retained in court as a petition for injunction. Where a specific prayer in an equitable petition is followed by a prayer for general relief, the plaintiff is not entitled under the latter to any relief which is not consistent with the case made by the petition and with such specific prayer. *Butler* v. *Durham*, 2 *Ga.* 414; *Bennett* v. *Brown*, 56 *Ga.* 216, 221; *Peek* v. *Wright*, 65 *Ga.* 638; *Empire Hotel Co.* v. *Main*, 98 *Ga.* 183–184; *Schmitt* v. *Schneider*, 109 *Ga.* 628. The main relief sought by the present petition was a cancellation of the note and mortgage. After obtaining that, it is obvious that the plaintiff would have no need for an injunction, even if the same could be predicated upon his prayer for general relief. Indeed it would be absurd for the court, after decreeing that a paper be delivered and canceled, to enjoin the defendant from negotiating it to a third person. The truth is, the only sort of injunction which would have been available to the plaintiff in this case was an interlocutory injunction, and this he certainly did not seek to obtain. Upon a state of facts such as that disclosed by the allegations of the petition before us, the proper course to pursue in order to obtain full and complete relief would have been as follows: 1. The plaintiff should have fully set out the facts, and prayed specifically for a restraining order, for a temporary injunction, and for cancellation. 2. He should have verified his petition as required by law, and then have presented the same for the sanction of the judge as a condition precedent to a right to file it. 3. The next step would have been to secure an interlocutory hearing, and the granting of a temporary injunction to remain of force so long as might be necessary to the plaintiff's protection. Had such steps as these been taken, the plaintiff's petition, because of the extraordinary relief sought by way of injunction, would have had a standing in court; and at the final hearing equity, having taken hold of the case for the purpose of affording the extraordinary relief, would have also disposed of all the matters involved in the litigation.

Now, what course was pursued by the plaintiff in the pres-

ent instance? Conceding that he set forth with sufficient particularity the facts of his case, he did not follow the same with a prayer for a temporary injunction, which was the only basis upon which he could properly apply to a court of equity to take cognizance of the case. His petition was not only lacking in this essential prayer, but it was not verified nor presented to the judge for his sanction before it was filed. Clearly, in preparing it the pleader never once contemplated obtaining a restraining order or an interlocutory hearing upon an application for temporary injunction. On the contrary it is manifest that he had no intention of asking any action to be taken upon the petition in advance of the appearance term; and there is scarcely room for reasonable doubt that if, at that term, no demurrer had been filed, the plaintiff would have been quite content to allow his petition to stand as it was until the trial term and then have pressed it only for the purpose of obtaining cancellation. In his bill of exceptions he characterized the case as being "a petition for the cancellation of a certain mortgage note." We take the same view of it. Even if the prayer for general relief could be treated as a prayer for injunction, it is evident that the pleader did not contemplate securing an injunction prior to the trial term of the case, and at that time the granting of it would have been entirely vain, for the reason that the note would then have passed its maturity.

In the brief of counsel for the plaintiff in error he cited and relied upon the case of *Willcox* v. *Ryals*, 110 *Ga.*, in which this court recognized and applied the rule laid down in 2 High, Inj. 1126, that: "The negotiation of commercial paper may be enjoined when it was obtained through fraudulent or improper conduct rendering it against conscience to enforce it, and when there is danger of its passing into the hands of innocent purchasers for valuable consideration and without notice, whereby the maker would be cut off from asserting his defense at law." The difficulty is, however, that counsel signally failed to bring the present case within the operation of this eminently just and sound doctrine, and it is now too late for him to invoke the same in behalf of his client.

*Judgment affirmed. All concurring, except Fish, J., absent.*