116  201
121  560

## EDWARDS *v.* MILLEDGEVILLE WATER COMPANY.

1. Where a petition for injunction against a company owning and operating a system of waterworks showed that the defendant and the plaintiff entered into a contract by the terms of which the plaintiff was to bear the entire expense of the material and labor necessary to conduct water from the company's main to his residence, as well as the cost of the necessary plugs, faucets, etc., and to pay the company a stated amount per annum for the use of the water, and the company on its part was to furnish him with water during a term of years, which still extended far into the future ; that the plaintiff had expended a large sum of money in having a pipe laid from the company's nearest water-main to his residence, and all the connections made and faucets placed, and had for several years been using the water and paying "his water rental promptly"; that the company had lately notified him that, unless he made with it a new contract, agreeing to pay a much larger sum annually for the use of the water, it would sever the connection between its main and his private pipe, thereby depriving him of the use of the water, a case was stated for the grant of an injunction prohibiting the defendant from executing this threat.

2. The petition stated the terms, scope, and extent of the contract with sufficient fullness and certainty to authorize the grant of the injunction prayed for.

Submitted June 25, — Decided August 8, 1902.

Equitable petition.  Before Judge Hart.  Baldwin superior court. January 14, 1902.

*Allen & Pottle,* for plaintiff, cited 5 Lawson, R. & P. 4011, 4131; Civil Code, §§ 4913, 4919, 4922; 98 *Ga.* 586; 69 *Ga.* 125 ; 60 *Ga.* 233; 46 *Ga.* 19; 45 *Ga.* 331.

*Roberts & Hines,* for defendant, cited 101 *Ga.* 188; 93 *Ga.* 587; 82 *Ga.* 128; 72 *Ga.* 92; 70 *Ga.* 198; 69 *Ga.* 126; 68 *Ga.* 825; 32 *Ga.* 550; 18 *Ga.* 475; 5 *Ga.* 341; 7 Am. D. 377; 12 Id. 433; 26 Id. 662 ; 3 Am. St. R. 767; 68 Id. 755 ; 109 Ala. 190 ; 42 Fed. 198 ; 10 Wall. 339; 4 Y. & C. 61.

FISH, J.  Edwards brought a petition for injunction against the Milledgeville Water Company, in which he sought to enjoin the defendant from disconnecting its water-main from the private pipe running therefrom to his residence, and from in any way interfering with his use of the water at his residence, under the terms of

the contract which he set up as having been made between the company and himself in the year 1897. Briefly stated, the terms of the contract which he alleged existed between the defendant company and himself were, that he was to bear the entire expense of the material and labor necessary to conduct water from the company's main to his residence, situated about one mile and a quarter from the nearest water-main of the company, as well as the cost of the necessary plugs, faucets and other material, and to pay the company $12.50 per annum for the use of the water, and the company, on its part, was to furnish him with the water during the entire term of its contract with the city of Milledgeville, which contract the petition alleged was entered into in the year 1891, and covered a period of thirty years from the date of its execution. The plaintiff alleged that he, "at an expense of $800.00, or other large sum, had the pipe laid from defendant's nearest main to his residence, and all the connections made and faucets placed," under the supervision of the superintendent "having entire charge of the affairs of said Milledgeville Water Co."; and since then, for about four years, had used the water, under said contract, "paying his water rental promptly." The petition, which was filed on March 29, 1900, further alleged that plaintiff had been lately notified by the company's superintendent that, unless he made with the company, on or before April 1, 1900, a new contract, "agreeing to pay an annual water rental amounting to more than one hundred dollars," it was its purpose "to annul said contract, and to cut off the water, thereby depriving him of the use under his said contract." The case was dismissed upon demurrer, and the plaintiff excepted. The demurrer was, that the petition was wholly without equity, that there was an adequate remedy at law; that, though no specific performance was prayed for in express terms, the object of the petition was a specific performance of the alleged contract, which relief the court, acting as chancellor, had no power to grant; that the petition wholly failed to definitely and specifically set out the date, details, scope, and extent of the contract sought to be enforced, or whether the same was written or oral.

1. It is contended by counsel for the defendant in error that the object of the plaintiff's petition, "though not prayed for in express terms, is to obtain specific performance of an alleged contract"; and that "a court of equity can decree specific performance

only when it can dispose of the matter in controversy by a decree capable of present performance; but it can not decree a party to perform a continuous duty extending over a series of years, and will leave the aggrieved party to his remedy at law." While it is true that if the injunction prayed for is granted, its effect will be that, so long as the defendant forces water in sufficient quantity through its main, and the plaintiff maintains his pipes, faucets, etc., in suitable condition for the purpose of conveying the water to and obtaining it at his residence, the defendant will be indirectly compelled to supply the plaintiff with water, yet the plaintiff does not ask that the court compel the defendant to specifically perform its contract. He does not seek to compel the company to continuously supply him with water during the term of the contract, but simply asks that it be enjoined from severing the connection between his pipe and its own. The relief for which he prays is not affirmative, but is negative and preventive. He asks that the company be compelled to let things remain as they are; that it be prevented from doing an act which will change the existing status of affairs. The company would not, by the grant of the injunction prayed for, be compelled to maintain and operate its plant and machinery and to force water through its main, in order to continuously furnish the plaintiff with water; and it is, therefore, unnecessary to determine whether or not a court of equity, in the case made, would compel it to do this. If the prayer of the plaintiff were granted, the company might stop its machinery and let its plant lie idle, and yet obey the injunction by simply refraining from cutting off the connection of the plaintiff's pipe with its watermain. But if it continued to force water through its mains, it would necessarily continue to supply the plaintiff with water at his residence, if he kept his pipe in proper condition to convey it there. The reason why a court of equity will not decree the specific performance of a contract which requires the discharge of continuous duties, involving the exercise of skill, personal labor, trained judgment, etc., is not because of the want of natural justice and equity in a case where specific performance of such a contract is sought, but because of the difficulties with which the court would be confronted in undertaking to enforce the performance of such duties, and the necessity there would be for a constant supervision on the part of the court in order to compel continuous obedience

to its decree. The case before us is not of this character. Here, by merely enjoining the defendant company from severing the connection between its main and the private pipe of the plaintiff and from doing anything to prevent water in the main from passing into such pipe, the threatened breach of the contract will be prevented, and the plaintiff will be afforded the relief for which he prays and to which he is entitled.

In Horsky v. Helena Consolidated Water Co., 13 Mont. 229, 33 Pac. 689, the plaintiffs, who were the owners of a large brewery, sought an injunction to prevent the defendant from shutting off water from the plaintiffs' private pipe, which connected with the defendant's system of piping. The court held: "An injunction will lie to enjoin a water company from breaking its contract to supply water to a brewery, when turning off the water would stop the brewing, destroy a large quantity of malt, and injure the brewers' trade." Pemberton, J., in the opinion said: "We think the facts stated in the complaint, which are confessed by the demurrer, entitle the appellants to invoke the equity jurisdiction of the court, and to the negative and preventive relief of injunction." In Callery v. New Orleans Water Works Co., 35 La. Ann. 798, the court held: "Where a contract is made with the city waterworks company to procure water from the pipes and fire-plugs of the company for a stipulated price, for the purpose of watering and sprinkling the streets, the party complying with his contract may prohibit the company and its officers and employees from any interference with his business under the contract, and from any act to hinder or disturb him in using or procuring the required quantity from the water-pipes, for the aforesaid purpose." Todd, J., said: "The plaintiff had the legal right to use the water from the pipes and fire-plugs in his business, in the manner and to the extent and for the purposes contemplated by the contract, and we can see no reason why he could not prevent the threatened invasion of his rights under such contract, and the stoppage of his water supply, by an injunction. It was not in our view to compel the company to do an act, but to refrain from interference with or doing something to the prejudice of the plaintiff, and in contravention of a legal engagement." In Brown v. Frankfort, 9 S. W. 384, a case decided by the Court of Appeals of Kentucky, it was held: "Where a city agrees, in consideration of the right of way granted, to allow the owner of land

through which its water-pipes are laid the free use at all times of two hydrants, a purchaser of its system of waterworks may be enjoined from digging up the pipes connecting the hydrants with the source of supply." Pryor, J., said: "Brown is not asking that the city be compelled to keep the way in repair, or to furnish him with water as long as the corporation exists; but that the contract rights of the parties remain as they were in the year 1883, when the right of way was granted. . . The right to this water in the mode provided for by the contract may be of great value to the land; and when the party injured is not even asking any affirmative relief, we perceive no reason why the city should not be compelled to let the pipes remain, or be prohibited from severing the connection by the removal of the pipes between Brown's land and the spring or reservoir." Sedalia Brewing Co. v. Sedalia Water Works Co., 34 Mo. App. 50, was a proceeding in equity brought by the plaintiff against the defendant to enjoin the latter from cutting off the supply of water to the former. It was held that injunction would lie, that the fact that under the contract "continuous duties arise does not prevent the aid of an injunction; and this, too, although equity might not, in the given case, decree the specific performance of the contract." In Graves v. Key City Gas Co. (Iowa), 50 N. W. 283, the court held that a gas company which had contracted with the owner of a dwelling to furnish him with gas, free of charge, for twenty years, and which had a monopoly, could be enjoined from wholly cutting off the supply. See also School District v. Ohio Valley Gas Co., 154 Pa. St. 539, 25 Atl. 868, where a natural gas company was prevented by injunction from shutting off the supply of gas to a schoolhouse.

The plaintiff is without an adequate remedy at law. A court of law could neither prevent the defendant from depriving him of the use of the water, nor restore to him such use after he had been once deprived of it; and the damages which he would sustain in the future, during the long period covered by the contract, by being deprived of the use of a plentiful supply of pure water flowing through pipes upon his premises, and easily and conveniently accessible at all times for the varied necessities and even the luxuries of a household, would be very difficult to ascertain, and could not, with any certainty, be estimated. Even if the plaintiff could, by erecting and maintaining a private system of waterworks, supply his resi-

dence and premises with water in the same manner and to the same extent that the defendant now does under its contract with him, the damages which the plaintiff would sustain by being deprived of the use of the water, as now supplied to him, during the period of time required for him to complete his own water-plant, would be practically impossible of ascertainment with any degree of certainty, to say nothing of the necessity, in order to arrive at the amount of his damages, of estimating the cost of constructing, keeping in repair, and operating, from year to year, such private works.

2. For the purpose of obtaining the injunction prayed for, the petition stated the terms, scope, and extent of the contract with sufficient fullness and certainty. The plaintiff showed the present existence of the contract, and that, under it, he would be entitled to the use of the water for many years to come. Consequently his mere failure to give the precise date when the contract was entered into, and the exact date when it would expire, afforded no ground for the dismissal of the petition.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*