JAMES J. WALSH vs. BRISTOL AND WARREN WATER WORKS.

JUNE 13, 1916.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1) *Public Service Corporation.  Water.  Proper Charges.*

A corporation created for the purpose of supplying water for commercial and domestic purposes, entered into a contract with a town by which it acquired an exclusive privilege for a period of fifty years to use the streets for maintaining its pipes, such contract providing that the corporation would not, during the term, make any charge in excess of the rates established at the date of such contract.  A customer in his application for water agreed to be bound by the corporation's rules.  When the contract was entered into between the company and the town certain flat rates were adopted, among them being a charge of $5 for a bathtub.  In consequence of the secret use of water by customers the company adopted a rule some years after the making of the contract, providing that no deduction would be made for fixtures claimed to be unused, but every fixture used or not would be deemed used and so charged for so long as it remained connected with the water pipe or waste pipe.

Plaintiff had on his premises two bathtubs connected with the sewerage system, but with no faucet supplying water directly from the company's system.  Plaintiff admitted the tubs had been used.  Plaintiff refusing to pay the charge for the tubs, the company threatened to cut off his supply and on bill in equity for injunction:—

*Held,* that the rule did not work an increase in the charge for water in excess of the rate established under the contract with the town, since it amounted merely to notice that the company intended to enforce a rate already existing and in force when the contract was made, and the fact that the company had for some time waived its right to charge this rate in cases where the customer had cut off the direct supply to the tubs, imposed no obligation on the company to continue such practice.

*Held,* further, that the rule was a reasonable one.

(2) *Water.  Public Service Corporation.*

A public service corporation supplying water to the inhabitants of a town has the right to cut off a water supply for non-payment of proper charges.

BILL IN EQUITY.  Heard on appeal of complainant and dismissed.

PARKHURST, J.  This is a bill in equity filed in the Superior Court sitting for the counties of Providence and Bristol, wherein the complainant seeks to enjoin the respondent from shutting off the water supply at his house in pursuance of certain rules established by the respondent.  The

Superior Court entered its decree dismissing the bill and the complainant thereafter duly perfected an appeal from that decree to this court. The cause is now before us upon this appeal.

It appears from the pleadings and testimony that the respondent is a corporation created by the General Assembly of the State of Rhode Island for the purpose of supplying water for commercial and domestic purposes to the residents of Bristol, Warren and Barrington, and for the purposes of its business, rightfully uses the public highways, roads and streets within those towns.

For many years the plaintiff has been a customer of the respondent and has had upon premises owned by him certain faucets, water taps and receptacles for water, all of which have been supplied and furnished with water through the pipes and mains of the respondent corporation.

In May, 1907, the town of Bristol and the respondent corporation entered into a contract by which the respondent acquired an exclusive right and privilege to use the public streets, lanes and squares of that town for the laying and maintaining of its pipes for a period of fifty years from May 15, 1907. In this contract is the following clause: "The company will not, during said term, charge for water for domestic or manufacturing purposes in excess of the rates now established and will, as soon as business conditions and the requirements of the company will reasonably warrant, make reasonable and equitable reductions of the rates or charges for water for said purposes."

The bill avers that the plaintiff has always paid all sums of money properly required by the defendant for the use of water on his premises at 38 Bourne Street, in Bristol, and the respondent has furnished him with water and the plaintiff is ready and willing to pay such sum as is properly required and to comply with all reasonable regulations; this allegation is denied by the answer.

On the 18th of January, 1913, the defendant delivered to the plaintiff a notice that unless a bill for water rates

amounting to $23.00 for the premises at 38 Bourne Street was paid within a week thereafter, the water would be shut off which, by the plaintiff's statement, would cause irreparable damage.    The allegation of the delivery of the notice to the plaintiff by the respondent is admitted by the answer.

The answer further avers that since the year 1899 the plaintiff has owned the premises, consisting of a house in which there are three tenements leased to different tenants; that in each of said tenements is a water faucet with a bowl connected with the sewerage system and that in the tenement on the first floor and also in the tenement on the second floor there is a bathtub to which there are no faucets attached to be used by furnishing water directly, but each of said tubs is connected with the sewerage system; that these tubs were installed when the house was built and at that time water pipes provided with faucets connected with the defendant's water system, were installed in connection with the tubs, but the plaintiff thereafter decided not to have water in the bathrooms and so notified the respondent, and was informed that in that case he should remove the pipes and water fixtures provided in connection with the bathtubs, which he did.

The answer further avers that since the removal of the faucets the plaintiff and his tenants have used the bathtubs without the knowledge and consent of the defendant by drawing water into a pail by means of a faucet connected with a set bowl and the pipes connected with the defendant's system.    That the plaintiff in his application for the use of water agreed to be governed by the defendant's rules; that when the contract was made between the defendant and the town of Bristol there were certain flat rates adopted as follows, which rates have remained continuously and are now in force:

"Dwelling houses occupied by one family for first faucet, $7.00.

"For each additional faucet to be used by same family, $3.00.

"For the first water closet, self-closing, $5.00.

"For each additional water closet, $4.00.

"For the first bathtub, $5.00.

"For each additional bathtub, $4.00.

"When the house is occupied by more than one family, one faucet only being used by all, for each family, $6.00.

"When a water closet or bathtub is used by more than one family, for each family, $5.00."

The answer further avers that for a number of years prior to November 1, 1912, certain of the residents of Bristol supplied by the defendant with water have had bathtubs and other fixtures not directly connected by pipes with the defendant's supply and have used water in practically the same amount as though they were connected. This was accomplished by various devices, by having a bathtub set in the same room with the set bowl, and filling the bathtub with a rubber tube; by cutting a hole in the partition between the bathroom and the kitchen and by leading a tube or tin spout through the partition; by screwing a pipe into the flush tank of the closet or siphoning water from such flush tank.

The answer further avers that for the early portion of the time this secret use of the water supplied by the defendant was a matter of small financial importance, but recently it has increased until, to the knowledge of the defendant, there are more than fifty cases. In consequence of this, prior to November 1, 1912, the defendant adopted a rule which is number 16 and which is as follows: "16. No deduction will be made for fixtures claimed to be non-used; every fountain, water closet, set basin, sink or other fixture used or not, will be deemed and held used, and will be charged for so long as such fountain, water closet, set basin, sink or other fixtures shall remain connected with the water pipe or waste pipe."

It further appears that the defendant gave the plaintiff notice of the adoption of this rule before November 1, 1912, and on or about November 1, 1912, sent the plaintiff a

memorandum of the amount due at the rate of $46.00 per annum, or $23.00 for the then ensuing six months. This included a charge for water to be furnished to faucets and water closets at the established rates and also a charge for water at the established rates to be furnished for use in the two bathtubs. The plaintiff offered to pay for everything but the amount charged for bathtubs and upon the defendant refusing to accept that sum and sending him a notice of its intention to shut off the water as aforesaid, this bill was brought to enjoin such action.

One of the rules is as follows: "17. The regular annual rate for the use of water shall be payable in advance, semi-annually, on the first day of May and November, in each year. In all cases of non-payment of the water rate in thirty days after the rent is due, the supply may be shut off and shall not be let on again except on payment of the rent due and the sum of two ($2.00) dollars."

The averments of the answer, above set forth, are fully proved. The only issue between the parties therefore is as to the rightfulness of the defendant's charge for the use of the two bathtubs which were connected with the sewerage system, but connected with which there was no faucet supplying water directly from the defendant's system.

In cross-examination the plaintiff admitted that, since the faucets were disconnected, the bathtubs have been used. "Q. 69. Mr. Walsh, how have these bathtubs been used since you disconnected the faucets? A. I can't tell you how they have been used for six or seven years. When I lived there my wife used to take water in a pail and put it in the tub. Q. 70. Where did she take the water from? A. From the kitchen sink. Q. 71. A water faucet connected with the Bristol & Warren Water Company's supply? A. Yes, sir. Q. 72. Filled the pail and then poured the water into the tub? A. Yes; carried it to the kitchen. Q. 73. Then pulled the plug and let the water run down the waste pipe into the sewer? A. Yes, sir. Q. 74. So far as you know that has been continued? A. So far as I know.

One lady upstairs has been there ten years, and the one down stairs has been there between five and six years. What is going on there now I can't say. I never see them using the tub. Q. 75. Ever hear them say? A. No, sir. Q. 77. The tubs, however, are still connected with the sewer? A. Yes, sir. Q. 78. And they have plugs in the waste pipe, so that the running out of the water can be controlled? A. Yes, sir. Q. 79. And they can be used if the water is put in them? A. Yes, sir. Q. 80. Just the same as they could be when you were there? A. Yes, as they always have been."

These admissions by the plaintiff are very significant, particularly when it appears that he did not call any of his tenants to show that these bathtubs were not used as claimed by the defendant. We think it is amply proved by these admissions that the plaintiff's bathtubs were being used by his tenants just as the answer claimed that they were.

Upon this state of facts the presiding justice of the Superior Court entered his decree dismissing the bill, and plaintiff appealed as above shown.

The questions raised by the record are: 1. Does Rule 16 (1) which was enacted November 1, 1912, work an increase in the charge for water for domestic purposes in excess of the rates established under the contract with the town? 2. Is Rule 16 a reasonable regulation?

As to the first question we find no ground to sustain the plaintiff's contention that by virtue of "Rule 16" there has been any increase of rates. "Rule 16" is not in the nature of a new rule; it is rather a notice to water takers that the defendant intends to enforce a rate already existing, and which was in force long prior to and in May, 1907, at the time when the defendant made its contract with the town of Bristol. As above shown the rate of $5 per annum for a bathtub installed upon the premises of the consumer was contained in the schedule of rates established by the company prior to May, 1907; and the same charge is now made to the

plaintiff as shown by the testimony. It will be presumed in the absence of evidence to the contrary that the rates above set forth were adopted by the company in accordance with the experience of other water companies, and the fairness of these rates is nowhere disputed in this cause. The fact that the defendant company for a number of years waived its right to charge this rate in cases where the customer, although having bathtubs in his house, had cut off the direct water supply to these tubs, furnishes no reason why the defendant should be held to continue this practice after it found that customers were taking advantage of its leniency, and, as in this case, were surreptitiously using water in bathtubs for which no payment was made. The practice of charging flat rates for water used through different classes of fixtures and in connection with various household appliances such as bathtubs, closets, sinks, sprinklers, etc., is too well established and recognized to require any discussion and no contention as to the propriety of such practice is raised in this case. No cases are cited by the plaintiff's counsel which in any way support his contention in this respect.

(2) As to the second question we find that rule 16 is a reasonable regulation. As above shown rule 16 is not strictly a new rule and does not vary previous regulations in force. Prior to November 1, 1912, the company believing that the amount of water surreptitiously taken was trifling in financial value, made no effort to enforce payment for water furnished for use in bathtubs unless that water was furnished directly through the pipes and fixtures attached to and adapted to be used with the tubs.

As the company became aware of the extent of this surreptitious use it enacted Rule 16 which practically notified its customers that thereafter it would insist upon payment according to schedule rates for each bathtub which was connected with the system of sewerage.

If water furnished by the company is used in a bathtub it is immaterial to the company how that water is obtained or to how much trouble the customer puts himself in order to

obtain it; and the possibility of so using the water furnished
by the company is sufficient to warrant the company in
protecting itself against such use without having to prove
that in a particular case it was so used; although in the case
at bar such proof is furnished.

That this rule is reasonable and is needed for the pro-
tection of the respondent corporation is shown not only by
the testimony of the complainant above quoted, but also by
the allegations of the answer which show the possibilities of
consumers securing water from the respondent corporation
surreptitiously and without payment therefor; and these
allegations of the answer are fully sustained by the testimony
of the treasurer of the respondent corporation given on the
hearing of this case before the Superior Court and now
brought before this court.

A case closely in point is *Harbison v. Knoxville Water
Company* (Ch. App. Tenn. 1899), 53 S. W. 993, in which
case the general principle applicable to the question is
stated and discussed, and a rule very similar to Rule 16 is
sustained as reasonable.   In that case the defendant com-
pany refused to supply water to an inhabitant of Knoxville
whose water was supplied by a hydrant with a bibb upon the
end of which was a screw, so that a hose might be attached,
because of the refusal of the customer to pay the charge
made for water for sprinkling, he claiming that he did not
intend to use the fixture for sprinkling purposes,—and
because of his refusal to file down the screw on the bibb
so that a hose could not be attached thereto.   In the
opinion written by WILSON, J., it is said, p. 995:   "The law
is well settled that water companies organized and vested
with the powers given to the defendant company, and
obligated to furnish cities and their inhabitants with water,
are in the nature of public corporations engaged in a public
business, and are charged with the public duty of furnishing
to the cities and their inhabitants water, alike, and without
discrimination and without denial, except for ground, and
upon sufficient cause.   It is equally well settled that such

companies, while thus charged and obligated, may adopt reasonable rules for the conduct of their business and the operation of their plants, and such rules are binding on their patrons, and may be enforced, even to the extent of denying. water to those who refuse to comply with them." . . . "The question, therefor, in every case of this character, is the reasonableness or unreasonableness of the rule assailed by the citizen asking for a supply of water, and invoked by the company in justification of its refusal to furnish it." . . . (p. 996): "The rule or requirement of the company that the party taking and paying for water for domestic purposes only must put his hydrant appliances in condition. for such use only, and not have it in a condition to use water through and from them for sprinkling purposes unless he pays a reasonable rental for the use of the latter purpose, is, we think, reasonable, and one that the company can enforce. Such a regulation for the sale of its water furnished through hydrants, where the quantity used cannot be or is not measured, is essential to protect the rights and safety of the company, and may be necessary to enable it to meet its obligations to the public, and its duty to furnish water to all inhabitants of the city alike and without discrimination. In determining the reasonableness or unreasonableness of a, rule adopted by a water company chartered to supply a city and its people with water, we must necessarily take into consideration its relations to the city, and its compacted. population, and the various elements composing such a population. It has no right to base a rule on the theory that the population, as a whole, is dishonest. But it has the right to adopt a rule which, while giving the honest citizen what he pays for, will prevent the dishonest from getting. what he never paid for, and never intended to pay for, and said he never wanted."

The parallel between the case cited and the case at bar is very close. The water company cannot be expected to furnish water without compensation. The ordinary and normal use of a faucet fixture does not include a supply to

bathroom fixtures or appliances. The rates as established by the company are made in view of that fact and specified charges are made for the supply of water to ordinary toilet and bathroom fixtures. The rates contemplate that every inhabitant of Bristol who uses the company's water for the purpose of supplying a bathtub shall pay for such water. The most obvious method of obtaining such supply is by having a supply fixture or faucet at the tub itself. That was the common method adopted in Bristol in the early days of the history of the water company. Certain of the inhabitants afterwards discovered that if they had bathtubs connected with the sewer they could obtain the company's water for use in those bathtubs by various devices, already enumerated.

It is obvious that if bathtubs are connected with the sewer in such a manner that consumers can supply themselves with water in any of the clandestine methods now in use, or in any which may hereafter be devised, it is impracticable for the company to maintain a constant watch upon the occupants of the several tenements to which the company supplies water and it is only by the adoption of a rule like Rule 16 that the company can efficiently protect its rights.

The number of consumers using these indirect and unauthorized methods of obtaining a water supply for their bathtubs has been and is on the increase, and unless the company shall be sustained in enforcing Rule 16 it is not difficult to foresee the time when the company will be compelled to furnish without compensation large and still larger quantities of water for use in the bathtubs in the territory supplied by the company.

The plaintiff cites one authority which seems at first sight to have a direct bearing in support of his contention, viz.: Farnham Water and Water Rights, Vol. 1, p. 881. "The water company cannot refuse to furnish water because there are bath accommodations on the premises, and the privilege of water for such purpose is not paid for, if they are not connected with the water supply." This text-writer

cites only one authority in support of the text quoted, namely, *Sheffield Water Works* v. *Brooks*, L. R. 8 Q. B. Div. p. 632. This case, however, throws no light upon the question now before the court.

That case was an appeal from an adjudication of a magistrate upon a criminal complaint against the water works to recover a penalty for not furnishing a supply of water. The complaint was made under a statute. In the opinion it was stated that the primary question is whether, under the statute, the water company has the right to require the consumer to furnish a meter and that the secondary question is whether under the statute the water company has the right to refuse to furnish water for domestic purposes other than for baths to premises where the connection between the water supply and the faucet at the bathtub has been severed, but the waste pipe of the tub remains connected with the sewer, against the expressed objection of the water company. The statute under which the complaint was brought enumerates the causes which permit the water company to shut off the supply of water and the case decided that the circumstances were not within the statutory provisions. There was no general regulation of the water company applying to the situation, nor did the facts disclose any situation such as is disclosed in this case of a determination on the part of the consumers to obtain water without paying therefor. The reasonableness of a regulation requiring payment upon the basis of a bathtub, although such tub is not directly connected with the water supply, but is connected with the sewer, was neither raised nor considered. See, also, *Allen* v. *Duluth Gas & Water Company*, 46 Minn. 290.

The company has the right to cut off a water supply for non-payment of proper charges. It is not understood that this principle is questioned, but see the following cases: Farnham on Waters, &c., Vol. 1, p. 876; *Hieronymus Bros.* v. *Bienville Water Supply Co.*, 131 Ala. 447; *Robbins* v. *Railway Co.*, 100 Me. 496; *Harbison* v. *Knoxville Water Company*,

*supra; Poole* v. *Paris Mountain Water Co.,* 81 S. C. 438; *Wood* v. *Auburn,* 87 Me. 287; *Girard L. Ins. Co.* v. *Philadelphia,* 88 Pa. St. 393.

We find no cases cited on behalf of plaintiff which in any way or to any extent support his contention that Rule 16 is unreasonable under the undisputed facts of this case; all such cases have been carefully examined, but we find none which requires comment further than as above.

Plaintiff cites several cases which support his right to the remedy by injunction both as a matter of general equity practice, and also as a citizen and property owner in the town of Bristol and by reason thereof entitled to the protection of the contract made between the company and the town in respect to rates. See *Edwards* v. *Milledgeville Water Co.,* 116 Ga. 201 (injunction); and cases cited *supra; Pond* v. *New Rochelle Water Co.,* 183 N. Y. 330 (injunction); *Robbins* v. *Bangor Ry., etc. Co.,* 100 Me. 496 (mandamus); *Smith* v. *Birmingham W. W. Co.,* 104 Ala. 315 (injunction); *Levy* v. *New Orleans W. Co.,* 38 La. An. 25 (injunction); *Ernst* v. *Same,* 39 La. An. 550 (injunction); *Rogers Park W. Co.* v. *Fergus,* 178 Ill. 571 (mandamus). In two of these cases, as indicated, the proceeding was by way of mandamus; in the rest by injunction. The defendant makes no contention on this point.

Defendant cites a few other cases sustaining as reasonable certain rules adopted by water companies for the protection of its plant and to prevent waste of water; see *Louisville Water Co.* v. *Wiemer,* 130 Fed. 257; *Pocatello Water Co.* v. *Standley,* 7 Idaho, 155; *Kimball* v. *N. E. Harbor W. Co.,* 78 Atl. (Maine) 865; *Watauga W. Co.* v. *Wolfe,* 99 Tenn. 429. These cases are simply referred to for the purpose of showing what rules, either general or special, courts have considered reasonable under peculiar circumstances.

This court is of the opinion, upon all the facts in evidence, that the complainant has shown no equity for relief under his bill.

The decree appealed from, dismissing the bill, is affirmed and the cause is remanded to the Superior Court for the counties of Providence and Bristol with direction to vacate the preliminary injunction which has been continued in force pending this appeal.

*Cooney & Cahill*, for complainant.
*Mumford, Huddy & Emerson*, for respondent.
*Charles C. Mumford*, of counsel.