ROSENKRANTZ *v.* CHATTAHOOCHEE BRICK COMPANY *et al.*

PER CURIAM. This was a petition to enforce specific performance of a voting trust or pooling agreement between a majority stockholder and minority stockholders in a private trading and manufacturing corporation exercising no public function whatever. · The petition was by a minority stockholder against the other parties to the agreement and the· corporation. The· allegations thereof recited the history of the corporation, averred a sufficient consideration for the contract, and set out at length the agreement, the material provisions of which were: The parties, all of the family of the majority holder except one of his associates in business, who held only one share of the stock, agreed to vote the stock then held by each, or thereafter acquired by any of the parties, at all ·corporate meetings, as a unit for the period of 45 years from the date of the agreement, to wit, July 11, 1900. To effect this end the stock was to be deposited with the majority stockholder as trustee (with the power in the owners to draw the dividends), to be by him voted during the term of the contract, subject to certain conditions and limitations, as follows: During the life of the trustee the stock should be voted annually for such person, a stockholder, as should be named by the trustee for president; for a designated son of the trustee, a minority stockholder, for vice-president, and, in the event

of the death of the son during the life of the trustee, for his wife (the petitioner) for vice-president (it being agreed that she was fully competent to discharge the duties of that office); in the event of the death of the trustee, the stock was to be voted by his successor, for whom provision was made in the agreement, for his son above named, for president, and for another son of the trustee for vice-president; in the event of the death of the son first referred to, then for the second named son as president, and for certain persons as directors of the corporation, if then in life and competent to discharge the duties of said office. The stock was to be so voted as to authorize the payment to the president and vice-president of a salary of $3,000 each per annum, to be paid out of the net earnings of the corporation, and not otherwise; to be voted against any increase of these salaries during the term of the agreement, the creation of any new salaried office, any increase of the capital stock of the corporation, and any sale or incumbrance of the corporate business or franchise, without the consent in writing of all parties to the agreement. The stock was not to be withdrawn from the agreement unless by a like unanimous consent of the parties, and no stock should be sold, transferred, or hypothecated to any person not a party to the agreement, unless it should be first offered to every other party to the agreement, with a provision to fix by arbitration the value of the stock in case of disagreement as to its value. If any stock should be sold to any person not a party to the agreement, such stock should at once pass out from the agreement. In the event of the death of the petitioner, leaving neither the son of the trustee nor children by him, her stock should be withdrawn from the agreement and delivered to the representatives of her estate. Any stock subsequently purchased or acquired by any of the parties should at once, and without more, become subject to the agreement. Any disagreement among the heirs of the trustee touching the selection of his successor, the election of officers, in the event the provisions made in the agreement should fail, the meaning of the contract or any provision thereof, should be submitted to arbitration. During the life of the trustee the contract might be altered in any respect by the consent in writing of the trustee, his son first named, and petitioner; and in the event of the death of the trustee, by like consent of all parties thereto then living. The contract stipulated that it was made for the good of the stockholders and the corporation, and to continue the existing wise, conservative, and economical management of the corporation, and to preserve the corporation from manipulators and wreckers. In the petition it was alleged, that after the execution of the contract and long before its breach the petitioner became the owner of all the outstanding stock not originally assenting to the agreement; that every share of stock had in fact assented to it; that upon the death of petitioner's former husband, who died upon a date named, the right to vote the stock, and to cause the same to be voted, for herself, or for such person as she might designate, for vice-president of the corporation, under the agreement, vested in petitioner, the majority stockholder and trustee being yet in life. A breach of the contract was averred, and the consequent loss to petitioner of the salary to which she was entitled under the contract. The specific

prayer of the petition was, "for a decree which shall declare the said agreement . . a valid and legal agreement binding upon all the parties thereto, and which shall declare your petitioner's right thereupon to be the vice-president of said company or to designate another as such vice-president, with the right to perform the duties of said office, and with the right to have and receive the salary incident to said office as and from the 2nd day of July, 1914," the date of the alleged breach of the contract. There was also a prayer for such other and further relief as was proper in the premises. The defendants demurred generally, insisting chiefly upon the following grounds of demurrer: (*a*) the petition set forth no cause of action; (*b*) the contract was without consideration; (*c*) the petitioner, having remarried, is not entitled to the benefits of the contract; (*d*) the contract is contrary to public policy and void. The petition was dismissed upon the last-mentioned ground. *Held:*

1. A court of equity will not decree specific performance of a contract which requires the discharge of continuous duties over a long period of time, in order to compel obedience to its decrees. See *Edwards* v. *Milledgeville Water Co.*, 116 *Ga.* 201, 203 (42 S. E. 417); *Greer* v. *Pope*, 140 *Ga.* 743 (2), 745 (79 S. E. 846).

2. The petition properly construed, in the opinion of the majority of the court, is one for specific performance of the contract only; and the plaintiff is not entitled, under the prayer for general relief, to any relief which is not consistent with the case made by the petition and germane to its prayer for specific performance. *Hairalson* v. *Carson*, 111 *Ga.* 57 (36 S. E. 319); *White* v. *Sikes*, 129 *Ga.* 508 (59 S. E. 228, 121 Am. St. R. 228). The majority are therefore of the opinion that the court did not err in dismissing the petition upon general demurrer, and that it is unnecessary to consider and decide the question of the validity of the contract. HILL and GEORGE, JJ., are of the opinion that the allegations and prayers are sufficient to sustain the petition as an action at law for damages for the breach of the contract, that it should be decided that the contract is legal and binding upon the parties thereto, and that plaintiff is entitled to maintain the action as one at law for the recovery of damages.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent, and Hill and George, JJ., dissenting.*

No. 313. FEBRUARY 25, 1918.

Equitable petition. Before Judge Bell. Fulton superior court. March 19, 1917.

*V. A. Batcheler* and *King & Spalding,* for plaintiff.

*Brewster, Howell & Heyman,* for defendants.