## RUSSELL v. INDUSTRIAL TRANSP. CO.*
### (No. 3795.)

(Supreme Court of Texas. Jan. 30, 1924.)

**1. Contracts ⬅94(1)—"Damage" essential to rescission for fraud.**

Some damage must be shown in an action to rescind a contract for fraud, in view of Bill of Rights, § 13, and Complete Tex. St. 1920 or Vernon's Ann. Civ. St. Supp. 1922, art. 3973b, but the word "damage" should not be restricted to a monetary loss; it being sufficient if the defrauded party has been induced to incur liabilities or obligations different from that represented.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Damage —Damages.]

**2. Contracts ⬅94(3)—Innocent misrepresentation avoids contract.**

Whether a misrepresentation is intentionally or innocently made, it avoids the contract.

**3. Fraud ⬅31—Remedies available.**

A defrauded party to a contract may stand to the bargain and recover damages for fraud, or he may rescind the contract, return the thing bought, and receive back what he paid.

**4. Contracts ⬅94(1)—Damage or injury essential element.**

In the contemplation of equity, for one to be defrauded in the making of a contract means that he was injured or defrauded to his damage.

**5. Contracts ⬅94(1)—Amount of damage immaterial if substantial.**

In an action for rescission of a contract on the ground of fraud, the amount of damage is immaterial provided it is substantial.

**6. Appeal and error ⬅930(3)—Questions submitted and answered indefinitely held to prevent implied findings.**

In an action to rescind a purchase of corporate stock for fraudulent representations that it was worth more than the purchase price and that the condition of the business was such that it would be worth 25 per cent. more on August 1st, where the court submitted questions as to value at date of sale and value on August 1st and the jury answered both questions, "Unknown," it cannot be presumed in support of the judgment that the court found plaintiff was injured or that the jury gave that effect to other answers.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

On motion for rehearing. Former opinion affirmed.

For former opinion, see 251 S. W. 1034.

Connor & Ramey, of Sulphur Springs, and Clark & Sweeton, of Greenville, for plaintiff in error.

W. M. Pierson, of Dallas, for defendant in error.

PIERSON, J. This case is now before this court upon motion for a rehearing. Upon recommendation of the Commission of Appeals in an opinion written by Judge H. C. Randolph, of Section A (251 S. W. 1034), this court reversed the holdings of the Court of Civil Appeals on the issue of actionable fraud, but remanded the cause to the district court for new trial on the proposition that plaintiff in error must show that he had been damaged, and the extent thereof.

In his motion for a rehearing, plaintiff in error vigorously insists that a contract secured by fraud may be rescinded without a showing that the aggrieved party has suffered any injury or loss. On account of the importance of the question involved, the cause was withdrawn from the Commission and set for argument before this court.

For a full and clear statement of the case, see the original opinion in 251 S. W. 1034. It is not deemed necessary to restate or to discuss any issues in the case, except the one raised by plaintiff in error on motion for a rehearing, and for that purpose we quote the following paragraph from Judge Randolph's opinion near its conclusion:

"It is elementary that where a false representation is charged to have misled a party into signing a contract, he must not only show the falsity of the representations, that he was misled by such and induced to sign the contract thereby, but he must also show that he has been damaged and the extent of his damages. The jury in this case found that the value of the stock at the time plaintiff entered into the contract to purchase it was unknown. Consequently there is no basis upon which to determine whether or not plaintiff was damaged, and the case must be reversed for the lack of such proof or finding of the jury."

[1] Upon investigation, we find the general and correct rule to be that some injury must be shown in an action to rescind a contract for fraud.

In the Bill of Rights, § 13, we find the following:

"All courts shall be open; and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

Judge Simkins, in his work on Contracts and Sales, defines "fraud" as follows:

"Fraud is an act or concealment involving a breach of legal duty, trust or confidence justly reposed, and from which injury results to another, or by reason of which an undue and unconscientious advantage is taken of another."

[2] Thus, actionable fraud is fraud from which injury results. Based upon that fact, Texas pursues the equitable rule that "whether misrepresentation is intentionally or innocently made, as far as the effect is concerned, it is the same and equally avoids the contract."

In discussing the essential elements of fraud, the existence of which are "conditions upon which a court of law will refuse to enforce performance, or a court of equity will rescind on the ground of fraud," Judge Simkins says:

"Sixth. It is essential to support the action that the complaining party must be misled to his injury, otherwise it would be 'damnum absque injuria.' Bremond v. McLean, 45 Tex. 10; Moore v. Cross, 87 Tex. 561, 29 S. W. 1051, and authorities cited; Blythe v. Speake, 23 Tex. 436; Hopkins v. Woldert (Tex. Civ. App.) 66 S. W. 63; Ming v. Woolfolk, 116 U. S. 602, 6 Sup. Ct. 489, 29 L. Ed. 740; Caffall v. Banderas Tel. Co. (Tex. Civ. App.) 136 S. W. 105; Lissner v. Stewart (Tex. Civ. App.) 147 S. W. 610."

In the case of Moore v. Cross, supra, Judge Brown, after stating and discussing the facts, says:

"The proof does not show that the property was worth less without these improvements than it would have been with them, nor that plaintiff would have derived any pecuniary benefit from their construction.

"If the promises of Moore be considered as representations fraudulently made, they belong to that class of frauds for which there is no redress in courts, because there was no pecuniary injury resulting from them, and courts do not undertake to deal with the breach of moral obligations. Big. on Fraud, p. 540; Lemon v. Hanley, 28 Tex. 226; Bremond v. McLean, 45 Tex. 17."

Judge Hodges, in the case of Hoeldtke v. Horstman (Tex. Civ. App.) 128 S. W. 646, says:

"Courts of equity will not interpose to rescind a contract for fraud, except where it becomes necessary to relieve the complaining party against some injury. Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. Ed. 112; Henninger v. Heald, 52 N. J. Eq. 431, 29 Atl. 190; Wenstrom, etc., v. Purnell, 75 Md. 119, 23 Atl. 134; Bomar v. Rosser, 131 Ala. 215, 31 South. 430; Hairalson v. Carson, 111 Ga. 57, 36 S. E. 319; 2 Pomeroy, Eq. Jur. § 899."

Judge Key, in the case of Hopkins v. Woldert Grocery Co. (Tex. Civ. App.) 66 S. W. 63, held plaintiff's petition insufficient because it failed to allege injury as a result of the fraudulent misrepresentation. The same principle is supported in Caffall v. Bandera Tel. Co. (Tex. Civ. App.) 136 S. W. 105.

Mr. Pomeroy very clearly states the correct rule in the following forceful language:

"The statement of facts of which it (fraudulent misrepresentation) consists must not only be relied upon as an inducement to some action, but it must also be one material to the interest of the party thus relying and acting upon it that he is pecuniarily prejudiced by its falsity—is placed in a worse position than he otherwise would have been. The party must suffer some pecuniary loss or injury as the natural consequence of the conduct induced by the misrepresentation. In short, the repre-

sentation must be so material that its falsity renders it unconscientious in the person making it to enforce the agreement or other transaction which it has caused. Fraud without resulting in pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal. Courts of justice do not act as mere tribunals of conscience to enforce duties which are purely moral."

Thus we see that the rule is fairly well settled in Texas, and the general rule announced by that excellent authority, Mr. Pomeroy, to be that it is essential that some injury or damage be shown in order to rescind a contract for fraud.

[3, 4] Of course, as stated by Judge Roberts in Blythe v. Speake, 23 Tex. 437:

"A party defrauded in a contract, has his choice of remedies. He may stand to the bargain and recover damages for the fraud, or he may rescind the contract, and return the thing bought, and receive back what he paid."

This in no wise affirms the proposition that equity will cancel the contract in the absence of injury, but infers injury, and on account thereof will relieve against the contract in its entirety at the election of the injured party. In the contemplation of equity, for one to be defrauded in the making of a contract means that he was injured, or defrauded to his damage.

Black on Rescission and Cancellation, in section 567, announces the rule in the following language:

"In order to obtain a rescission of a contract, it is necessary for the complaining party to show that he has suffered actual loss or injury by reason of it, or that he is threatened with substantial loss or injury which will fall upon him if the contract is not annulled."

In section 37 he gives the reasons for the rule as follows:

"*Resulting Loss or Damage to Defrauded Party.*—As a general rule, a fraud which causes no injury is not legally cognizable; and it is an essential part of the definition of fraud as a cause for the intervention of equity, or for a party to take steps to rescind a contract or other obligation into which he has entered, that it should have resulted, or that it will result, in some loss, damage, detriment, or injury to him. Neither courts of law nor courts of equity exercise their powers for the purpose of enforcing moral obligations or correcting unconscientious acts which are not followed by any loss or damage; fraud and injury must concur to furnish a ground of judicial action. In the case of executed contracts, the loss, if any, will naturally have occurred before steps are taken to rescind. But in the case of executory contracts, the rule does not mean that the party complaining should have sustained actual loss at the moment of rescinding or filing his bill for rescission, but it is enough to show that such will be the inevitable result if the contract is completed according to its terms. In the state of Louisiana this has been incorporated into the Code, but it would probably be rec-

ognized everywhere as a sound principle of equity jurisprudence. * * * If damage is shown, the extent of the injury occasioned by the fraud will not be inquired into in a suit to rescind the contract. And the injury need not be accurately measurable in money, but it is sufficient if it is of a pecuniary nature."

See authorities cited by him.

With one exception, all the authors that we have examined have announced the rule as above stated without qualification.

Cyc, vol. 9, p. 431, states it briefly, but clearly:

"*Damage Must Be Shown.*—As in an action for deceit, so also in order to avoid a contract for false representations, it is essential that the party complaining shall have been prejudiced or injured by the fraud."

Elliott on Contracts, vol. 1, § 91, says:

"Before fraud will give rise to an action for deceit, or for rescission, or before a sufficient defense can be predicated thereon in an action on the contract, the fraud practiced must result in injury. The principle of damnum absque injuria applies."

[5] Of course, as is pointed out in Elliott and others, the word "damage" should not be restricted to a monetary loss; that is, it need not be measured in money, but it is sufficient if the defrauded party has been induced to incur legal liabilities or obligations different from that represented or contracted for. In an action for rescission, the amount of the damage is immaterial, provided it is substantial.

Williston on Contracts says:

"It is not necessary that actual damage shall have resulted from fraud in order to justify rescission."

He cites only one case, that of Barnes v. Century Savings Bank, 149 Iowa, 367, 128 N. W. 541. The holding in that case is properly summed up in the syllabus as follows:

"False representations knowingly made with intent to deceive, or a concealment of material facts with like intent to induce one to incur an obligation which he would not otherwise have made are grounds for rescission, although no actual damage results."

The facts of the case showed that the complaining party had by fraudulent representations been induced to incur an obligation which but for same he would not have incurred. He had not actually suffered damage, but would do so unless the contract was canceled. Therefore injury was shown.

The case first presented and most relied on by plaintiff in error as supporting his proposition that no injury need be shown is that of Spreckels v. Gorrill, 152 Cal. 383, 92 Pac. 1011, by the Supreme Court of California. This case does not support the contention. The question under consideration was not whether rescission could be had without a showing of injury, but *whether or not damage or injury was shown* by the facts of the case, and at the threshold of the discussion the court says:

"*That fraud which has produced, and will produce, no injury will not justify a rescission, nor support an action either for rescission or damages, is an established principle of law and equity.* [Italics ours.] But there is no rule that the injury must be of such a nature that it can be accurately measured in money. And we know of no rule of pleading which, in an action based upon a rescission between the parties or seeking to enforce such rescission, requires a statement that the fraud complained of had caused or would cause a specific amount of damages. It may be conceded that it must be shown that the plaintiff, by reason of the fraud, suffered an injury of a pecuniary nature, that is, an injury to his property rights, as distinguished from a mere injury to his feelings, but it will be sufficient if the facts alleged show that material injury will necessarily ensue from the fraud, although the amount of the pecuniary loss is not stated. Such injury is shown by the facts alleged in the present case."

It then quotes with approval the following by Mr. Pomeroy:

"If any pecuniary loss is shown to have resulted, the court will not inquire into the extent of the injury; it is sufficient if the party misled has been very slightly prejudiced, if the amount is at all appreciable." 2 Pomeroy's Equity Jurisprudence, § 898.

It cites with approval Wainscott v. Occidental Association, 98 Cal. 257, 33 Pac. 88, wherein in cases of this kind it is held that the fraud is the essential thing; the precise amount of damage being of secondary importance. The holding of the court clearly was that damage or injury was shown, and the principle emphasized was that—

"One who buys property is lawfully entitled to *all* the benefits of the purchase; that is, to the full value of the property he buys regardless of the price he paid."

And following the language last quoted, the court uses the following language, relied on by plaintiff in error:

"And it is a fundamental principle of the law of fraud that where one has, by false and fraudulent representations as to the quality of property, led another to believe it to be possessed of valuable qualities and thereby wrongfully induced the other to buy the property, presumably in order to obtain the benefit of property possessing those qualities, the seller will not be allowed to show as a defense to an action for such fraud, that the property, in its actual condition, was worth the price paid, or more."

The court sums up its holding with:

"The real question in all such cases is whether or not the property, if it had been as represented, would have been of substantially greater value than its actual value in its real condition. The price actually paid is immate-

rial as an element in the cause of action, though it may be admissible evidence on the question of value."

The issue decided was not that rescission could be had without a showing of injury, but how that injury may be shown, the measure of injury or damage.

The cases of Davis v. Butler, 154 Cal. 627, 98 Pac. 1047, and Mather v. Barnes et al. (C. C.) 146 Fed. 1004, are to the same effect.

In 1919 the Legislature of Texas enacted a statute bearing upon the rule or measure of damages in fraud cases. Complete Statutes, art. 3973b.

We have examined a number of cases from California, and it appears that the Supreme Court of California has uniformly supported the general rule announced by the text-writers and the courts of the various states of the Union, that some pecuniary injury must be shown.

The cases from the various states and from the Supreme Court of the United States are so numerous that we refrain from citing them. Many are cited by the text-writers.

We can safely say that, at least, the great weight of authority supports the rule herein announced. We think the safe and true rule is that some pecuniary injury is essential to an action to rescind a contract for fraud, as announced by Mr. Pomeroy and as has been uniformly held by this and the other courts of Texas.

We have given more extensive discussion perhaps than the subject demands in view of the former holdings of the Texas courts and the great weight of authority, but it is justified by the fact that we withdrew the case from the Commission on this issue, and in view of the earnest argument by able counsel for plaintiff in error.

[6] Plaintiff in error in his motion for a rehearing does not contend that the findings of the jury disclose injury to him. However, the circumstances under which the case now rests make it advisable that we should briefly review the findings.

The court propounded to the jury the question:

"Did Johns and Londergon represent to plaintiff, at the time he purchased the same, that the stock was then worth more than he was paying for said stock?"

It answered: "Yes."

The court did not ask whether or not that representation was true, but asked what was the reasonable cash market value of the stock at the time plaintiff purchased same; to which the jury answered: "Unknown."

If the jury had been asked and had found that that representation was false, it might reasonably have been deduced therefrom that the stock at the time of purchase was not worth more than he was paying for it, and that he was injured, in that by fraud he was induced to buy stock of less value than represented and of less value than he contracted for. So, those questions and answers are of no avail to plaintiff in error.

The court propounded to the jury the question:

"Did Johns and Londergon represent to plaintiff that they had intimate knowledge of the value of the stock in controversy and the defendant's business?"

It answered: "Yes."

Then:

"Did the said Johns and Londergon represent to plaintiff that the existing condition of the business at that time was such that they could and did they guarantee that said stock would be worth on the market after August 1, 1920, 25 per cent. more than he was paying for same?"

It answered: "Yes."

Then:

"Were such representations in reference to the condition of said business true?"

It answered: "No."

It will be observed that the finding of the jury was upon the existing condition of the business at the time the contract was made, and not the value of the stock at a future date. It was upon the latter view of the findings—that is, that the representation was as to a fact in futuro—that the honorable Court of Civil Appeals held the representations were merely expressions of opinion, and therefore not actionable as fraud.

The court asked the jury:

"What was the reasonable cash market value of the stock in question on the 1st day of August, 1920?"

And to this the jury answered: "Unknown."

It was not the guaranties included in the questions upon which plaintiff in error was seeking to recover. If so, his suit would have been for damages, and, of course, he would of necessity have had to show damage and its extent.

It is clear that the questions as to the representations and their falsity were for the purpose of proving fraud and the questions as to the value of the stock at the time of the contract and on August 1st thereafter were for the purpose of proving that plaintiff in error was injured or damaged by the fraud.

While it is suggestive that it might be deduced from the finding that the representation as to the existing condition of the business at the time plaintiff in error purchased the stock was false, that on August 1st thereafter the stock was not worth 25 per cent. more than he was paying for it, yet it must not be overlooked that this was in futuro, and the liability was based—and necessarily

so, in order to maintain the action—upon the existing condition of the business at the time of the purchase of the stock; else, instead of representation, it would have been an expression of an opinion.

The court and the parties treated the questions as to the value of the stock at the time of the purchase and on August 1st as necessary to a showing of loss, though perhaps on motion for judgment the court and plaintiff in error took the view that loss or injury was not necessary to a rescission; fraud having been shown.

The questions having been asked, we cannot, in support of the judgment, presume that the court found injury to plaintiff in error, or that the jury gave that effect to their answers to other questions. The only possible purpose of those questions that were answered "unknown" was to develop the fact that plaintiff in error was injured, as he was suing only for rescission, and not to recover damages. Their answers could have been applied to no other use.

The original judgment herein rendered, remanding the cause to the district court for a new trial, was correct. Therefore the judgment of the Court of Civil Appeals reversing the case, is affirmed, and the cause is remanded to the trial court for another trial in accordance with the original opinion herein and this opinion.